IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PQ LABS, INC., | No. C 12-0450 CW |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO |
| v. | DISMISS, GRANTING DEFENDANTS' MOTION |
| YANG QI; ZAAGTECH, INC.; ANDY NGUYEN; JINPENG LI; and HAIPENG LI, | TO STRIKE AND GRANTING DEFENDANT NGUYEN'S MOTION TO |
| Defendants. | DISMISS FOR IMPROPER VENUE |

_____/

This case arises from Defendants' alleged misappropriation of trade secrets from Plaintiff.  Defendants Yang Qi, Jinpeng Li and ZaagTech, Inc. move to dismiss under Federal Rule of Civil Procedure 12(b)(6) and to strike under Federal Rule of Civil Procedure 12(f).[1]  Defendant Andy Nguyen moves separately to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3).  Plaintiff opposes both motions.  The motions were taken under submission and decided on the papers.  Having considered all of the papers filed by the parties, the Court grants in part the motion to dismiss for failure to state a claim, grants the motion to strike and grants the motion to dismiss for improper venue.

---

[1] Defendant Haipeng Li has not been served.

BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint (1AC). Plaintiff PQ Labs is a California corporation with its principal place of business in San Jose, California, which is engaged in the business of designing, developing, manufacturing, and selling hardware and software for computer touch screen products. Plaintiff "authored software and registered with the United States Copyright Office the work entitled PQ Labs MultiTouch System Software as Registration No. TXu 1-620-335. The software embodied in this copyright registration works with PQ Labs hardware circuitry and microchips to produce the user interface of its touch screen products." 1AC. ¶ 14.

Defendant Yang Qi worked for Plaintiff as an account manager from 2009 until he was terminated in April 2010. As an account manager, Qi handled the sale of products to customers and was privy to information about Plaintiff's products, customers and policies on the secrecy of client lists and information. Defendant Jinpeng Li was an engineer hired to design hardware for Plaintiff's touch screen products. In May 2010, Defendant Andy Nguyen was hired as a sales and account manager to replace Qi.

Qi developed a plan to use his access to Plaintiff's confidential information about customers and the hardware and software design of Plaintiff's products to create a directly competing business, MultiTouch Group LLC. Qi eventually

established ZaagTech in China as a direct competitor, using Plaintiff's proprietary information to develop touch screen products and Plaintiff's confidential customer lists to obtain customers. To further his plan, Qi recruited help from Li, who had designed Plaintiff's hardware products. Li had signed a document for Plaintiff entitled, "Employee Rules and Confidentiality Agreement," which alerted him to the confidentiality of customer information, product information and schematics and instructed that it be protected. While he was employed by Plaintiff, Li shared confidential information with Qi.

When Nguyen was hired by Plaintiff to replace Qi in May 2010, he signed an Employee Agreement and an Employee Confidentiality Agreement. Before Nguyen left his employment with Plaintiff in June 2011, he copied all accessible company files onto a personal portable hard drive which he transferred to Qi, ZaagTech and Li in exchange for compensation. Shortly after Nguyen left his job with Plaintiff, ZaagTech began soliciting customers from Plaintiff's confidential customer list.

Plaintiff was damaged by Defendants' improper acts and, as a result, was forced to drop its prices to its customers in order to compete with Defendants and ensure its viability as a business. Plaintiff asserts the following causes of action: (1) misappropriation of trade secrets against Qi, ZaagTech and Nguyen; (2) misappropriation of trade secrets against Qi, ZaagTech and Li; (3) copyright infringement against Qi, ZaagTech and Li;

(4) unfair competition against Qi, ZaagTech and Nguyen;

(5) unfair competition against Qi, ZaagTech and Li; (6) unfair competition against Qi and Haipeng Li; (7) violations of California Penal Code section 502 against Qi, Jinpeng Li and ZaagTech; (8) unfair competition against Qi and ZaagTech; (9) fraud against Qi; (10) tortious interference with contract and prospective economic advantage against Qi and Haipeng Li; (11) tortious interference with prospective economic advantage against Qi, ZaagTech and Nguyen; (12) breach of contract against Nguyen; (13) breach of fiduciary duty against Qi and Nguyen; (14) breach of contract against Jinpeng Li; (15) breach of fiduciary duty against Qi and Jinpeng Li; (16) conversion against Qi and Haipeng Li; (17) trespass against chattels against Qi, ZaagTech and Jinpeng Li; (18) violation of the computer fraud and abuse act against Qi and ZaagTech; (19) civil conspiracy against all Defendants; and (20) aiding and abetting against all Defendants.

LEGAL STANDARD

I. Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

II. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527

United States District Court
For the Northern District of California

(9th Cir. 1993), reversed on other grounds, 510 U.S. 517 (1994).
Motions to strike are disfavored because they are often used as
delaying tactics and because of the limited importance of
pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp.
1450, 1478 (C.D. Cal. 1996). They should not be granted unless it
is clear that the matter to be stricken could have no possible
bearing on the subject matter of the litigation. Colaprico v. Sun
Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

III. Motion to Dismiss for Improper Venue

A defendant may raise a Rule 12(b)(3) motion to dismiss for
improper venue in its first responsive pleading or by a separate
pre-answer motion. Fed. R. Civ. P. 12(b)(3). Once the defendant
challenges venue, the plaintiff bears the burden of establishing
that venue is proper. Piedmont Label Co. v. Sun Garden Packing
Co., 598 F.2d 491, 496 (9th Cir. 1979).

When considering a Rule 12(b)(3) motion to dismiss, the
pleadings need not be accepted as true, and the court "may
consider facts outside of the pleadings." Richards v. Lloyd's of
London, 135 F.3d 1289, 1292 (9th Cir. 1998). If the court
determines that venue is improper, it may dismiss the case, or, if
it is in the interest of justice, transfer it to any district in
which it properly could have been brought. 28 U.S.C. § 1406(a);
Dist. No. 1, Pac. Coast Dist. v. State of Alaska, 682 F.2d 797,
799 (9th Cir. 1982). The decision to transfer rests in the
discretion of the court. 28 U.S.C. § 1404(b); King v. Russell,

963 F.2d 1301, 1304 (9th Cir. 1992)(holding that the trial court did not abuse its discretion under 28 U.S.C. § 1406(a) when it chose to dismiss, and not transfer, the action because of improper venue).

DISCUSSION

I. Motion to Dismiss

     A. Claim 1 for Misappropriation of Trade Secrets Against Qi and ZaagTech

    In this cause of action, Plaintiff alleges that Qi and ZaagTech misappropriated Plaintiff's trade secret customer information by taking this information from Nguyen with knowledge that he had acquired it by improper means, namely, by breaching his duty as Plaintiff's employee to keep the customer lists confidential.

    To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code §§ 3426 through 3426.11, the plaintiff must allege that (1) the plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc., 160 Cal. App. 4th 288, 297 (2008).  Under California Civil Code section 3426.1(b), misappropriation of a trade secret means

       (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Defendants Qi and ZaagTech argue that this claim against them must be dismissed because the 1AC does not allege that they knew that Nguyen obtained the alleged trade secrets by improper means or that the customer information provided by Nguyen belonged to Plaintiff.

The 1AC, taken as a whole, sufficiently alleges that Qi and ZaagTech knew that the customer information they received from Nguyen belonged to Plaintiff and that he obtained it through improper means.

B. Claims 4, 5, 11 and 13 Preempted by CUTSA

Defendants Qi, ZaagTech and Li argue that Plaintiff's claims against them for unfair competition, tortious interference with

8

prospective economic advantage and breach of fiduciary duty are preempted by CUTSA because they are based on the same nucleus of facts as Plaintiff's claims for trade secret misappropriation. Plaintiff responds that these claims are not preempted because claims 11 and 13 are based on the additional factual element of breach of contract by Nguyen and claims 4 and 5 are based on the misappropriation of proprietary information in addition to trade secrets.

"CUTSA preempts common law claims that are based on misappropriation of a trade secret." Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008).  However, CUTSA exempts certain claims from the scope of its pre-emption: it "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).  CUTSA defines a trade secret as

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

"Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, at *9 (N.D. Cal.). "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are no more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA preempts the other claim." Convolve, Inc. v. Compaq Computer Corp., 2006 WL 839022, at *6 (S.D.N.Y.) (applying California law). If a claim is based on confidential information other than a trade secret, as that term is defined in CUTSA, it is not preempted. First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008).

The Court must, therefore, compare Plaintiff's claims for misappropriation of trade secrets with the claims Defendants argue are preempted to determine if the latter are based on confidential information other than a trade secret or if there is some material distinction between the wrongdoing alleged in the claims.

Plaintiff's first and second causes of action are for misappropriation of trade secrets. In the first cause of action, Plaintiff defines its trade secret as "customer lists for its products from which it obtained independent economic value from

the fact that, among other things, said lists were not generally known to the public or to the touch screen industry and PQ Labs utilized this trade secret information to sell its products to customers, generate revenues, and generate profits."  1AC ¶ 43. In the second cause of action, Plaintiff defines its trade secrets as "confidential designs and drawings for hardware, circuitry, and FPGA microchip, as well as multi-touch software code for its touch screen products."  1AC ¶ 51.

Plaintiff's fourth cause of action for unfair competition alleges that Qi, ZaagTech and Nguyen "appropriated PQ Labs' valuable business property in the form of PQ Labs' stable of customers and information relating to customers . . ."  1AC ¶ 65. Plaintiff also alleges that "there is a public policy against third parties, particularly newly established competitors, stealing another business's list of customers, rather than developing customers themselves."  1AC ¶ 67.  Thus, the fourth cause of action is premised upon the same nucleus of facts as the first cause of action for misappropriation of trade secrets, and it must be dismissed as preempted by CUTSA.  Dismissal is with leave to amend if Plaintiff is able to add allegations that remedy this deficiency.

Plaintiff's fifth cause of action for unfair competition alleges that Qi, ZaagTech and Nguyen "appropriated PQ Labs' valuable business property in the form of PQ Labs' proprietary product designs for touch screens, including internal and external

United States District Court
For the Northern District of California

components and user interface . . . ." 1AC ¶ 70.  Thus, the fifth

cause of action is premised upon the same nucleus of facts as the

second cause of action for misappropriation of trade secrets and

must be dismissed as preempted by CUTSA.  Dismissal is with leave

to amend if Plaintiff is able to add allegations that remedy this

deficiency.

The eleventh cause of action for tortious interference with

prospective economic advantage against Qi, ZaagTech and Nguyen

alleges that "Andy Nguyen intentionally disrupted PQ Labs'

business relationships with its customers and distributors by

collaborating with Yang Qi and ZaagTech to help them obtain that

business by disclosing PQ Labs' confidential customer lists to

them with knowledge that Yang Qi and ZaagTech would contact said

customers and distributors in an effort to poach sales from PQ

Labs."  1AC ¶ 114.  Although Plaintiff argues that this claim is

also based on breach of contract by Nguyen, there is no allegation

in this cause of action addressing a contract or breach of

contract.  Furthermore, this claim is brought against Qi and

ZaagTech as well as Nguyen.  Qi and ZaagTech could not be liable

for the breach of Nguyen's contract with Plaintiff.  Therefore,

this claim is dismissed as preempted by CUTSA.  Dismissal is with

leave to amend if Plaintiff is able to add allegations that remedy

the deficiencies noted.

The thirteenth cause of action for breach of fiduciary duty

against Qi and Nguyen alleges that, as agents of PQ Labs, Qi and

Nguyen were in fiduciary relationships with PQ Labs which they breached by disclosing PQ Labs' trade secret confidential customer lists to others.  1AC ¶ 126-27.  Even though this cause of action adds the element of breach of fiduciary duty, it is also based on the same nucleus of facts as the misappropriation claim and is preempted.  See Farhang v. Indian Inst. of Tech., Kharagpur, 2010 WL 2228936, *11 (N.D. Cal.) (breach of fiduciary duty claim preempted by misappropriation claim where conduct alleged in both claims based on same nucleus of facts).  Therefore, this claim is dismissed, with leave to amend.

        C. Claims 13 and 15

        Defendants argue that the thirteenth and fifteenth causes of action for breach of fiduciary duty should be dismissed against Qi because the allegations in the 1AC do not indicate the existence of a fiduciary relationship between Plaintiff and Qi.

        The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.  City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483 (1998); Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991).  Under California law, a fiduciary relationship arises in one of two ways.  A party may be subject to fiduciary obligations if that party "knowingly undertake[s] to act on behalf and for the benefit of another, or . . . enter[s] into a relationship which imposes that undertaking as a matter of law."  GAB Bus. Servs.

United States District Court
For the Northern District of California

Inc. v. Lindsey & Newsom Claim Servs., Inc. 83 Cal. App. 4th 409, 416 (2000) ("There are two kinds of fiduciary duties--those imposed by law, and those undertaken by agreement."), disapproved on other grounds in Reeves v. Hanlon, 33 Cal. 4th 1140 (2004).  A fiduciary duty is undertaken by agreement when a confidence is reposed by one party in the integrity of another, and the party in whom the confidence is reposed voluntarily accepts or assumes to accept the confidence.  Id. at 417.  The existence of the repose and the acceptance of a confidence are questions of fact.  Id.

     Plaintiff acknowledges that the 1AC does not allege that Qi was subject to fiduciary obligations as a matter of law, but argues that the 1AC contains sufficient factual allegations of the existence of a fiduciary relationship "so as to raise Plaintiff's right to relief above the speculative level."  Plaintiff points to ¶ 126 of the 1AC which alleges that, as Plaintiff's "workers with access to and knowledge of confidential information including customer lists, and as agents of PQ Labs, Yang Qi and Andy Nguyen were in fiduciary relationships, respectively, with PQ Labs during the period they worked for PQ Labs and, thus they owed PQ Labs undivided loyalty."  Paragraph 126, however, does not allege that Qi knowingly undertook the responsibility to act on behalf and for the benefit of Plaintiff.  In other words, the paragraph alleges that Plaintiff may have reposed its confidence in Qi, but nowhere does it allege that Qi accepted that responsibility.  In paragraph 138 of the 1AC, Plaintiff alleges that Qi "was in a fiduciary

14

relationship with PQ Labs as its sales representative and agent."

However, this conclusory allegation is also insufficient to

establish that Qi entered into an agreement with Plaintiff to act

as its fiduciary.

Therefore, Defendants' motion to dismiss claims 13 and 15 as

to Qi is granted.  Dismissal is with leave to amend.

D. Claim 9

Defendants argue that claim 9 for fraud against Qi for

failure to disclose the existence of competitor MultiTouch Group

and the alleged diversion of customer sales orders from Plaintiff

to MultiTouch Group should be dismissed for failure to allege a

duty for Qi to disclose such information.  Plaintiff does not

respond to this argument and, therefore, concedes it.  Defendants'

motion to dismiss this claim is granted, with leave to amend.

E. Claim 16

The sixteenth cause of action for conversion alleges that

Plaintiff owned and possessed a certain thirty-two inch touch

screen monitor entitled PQ Labs Multi-Touch 32 G3X32 Overlay which

was "involved in a sales transaction" with one of Plaintiff's

customers on February 10, 2010.  1AC ¶ 145.  Qi, through his

company MultiTouch Group LLC, took possession of the monitor and

fulfilled an order request sent directly to Plaintiff.  1AC ¶ 146.

Plaintiff did not consent to Qi's taking possession of the monitor

and acting as its distributor, nor did Plaintiff have knowledge of

Qi's actions.  1AC ¶ 147.  Plaintiff was harmed by Qi's actions

because MultiTouch Group LLC took payment at the full retail price of $3,300 and paid to Plaintiff the wholesale price of $2,650. Plaintiff would have realized the full retail price of $3,300 but for Qi's interference.  1AC ¶ 148.

Defendants argue that the cause of action for conversion must be dismissed because the intangible right of a sales opportunity cannot be converted and because Plaintiff admits that it was paid for the touch screen monitor that it alleges was converted.

Under California law, a claim for conversion requires a plaintiff to allege (1) "ownership or right to possession of property;" (2) a defendant's wrongful act toward the property, causing interference with the plaintiff's possession; and (3) damage to the plaintiff.  PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 394 (2007).

Plaintiff alleges all of the elements necessary to state a claim for conversion.  That Plaintiff was given partial payment for the allegedly converted property does not negate the allegations that Qi acted wrongfully in regard to it and that his actions caused damage to Plaintiff.  Therefore, the motion to dismiss this claim is denied.

F. Claim 19 and 20

Defendants argue that the nineteenth and twentieth causes of action for conspiracy and aiding and abetting should be dismissed because they do not constitute independent causes of action.

United States District Court
For the Northern District of California

Plaintiff responds that, although conspiracy is not a cause of action, it is a legal doctrine that imposes liability on persons who have not actually committed a tort themselves, but shared with the tortfeasors a common plan or design.  Similarly, Plaintiff argues that the aiding and abetting claim is sufficient to state a claim because the 1AC alleges that each Defendant provided substantial assistance and encouragement to the others in perpetrating the alleged wrongs.

Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994) (citing Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 784 (1979)).  "Standing alone, a conspiracy does no harm and engenders no tort liability.  It must be activated by the commission of an actual tort." Applied Equipment Corp., 7 Cal. 4th at 511.

Civil conspiracy consists of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995).  "The conspiring defendants must . . . have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." Id. at 1582 (citing Wyatt, 24 Cal. 3d at 784-86).  This knowledge must be

combined with an intent to aid in achieving the objective of the conspiracy. Kidron, 40 Cal. App. 4th at 1582; Schick v. Bach, 193 Cal. App. 3d 1321, 1328 (1987). A claim of unlawful conspiracy must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 550 U.S. at 556. A bare allegation that a conspiracy existed does not suffice. Id.

Plaintiff's cause of action for conspiracy alleges that each Defendant "did agree, conspire, plan and effectuate a common plan and scheme to misappropriate PQ Labs proprietary information in order to establish a new business to compete directly with PQ Labs, poach PQ Labs customers, interfere with PQ Labs business and divert the same to ZaagTech and otherwise for Defendants' commercial gain. Defendants did the acts and things herein alleged pursuant to, and furtherance [sic] of, the conspiracy and above-alleged Plan. Each of the Defendants furthered the conspiracy by cooperating with, lending aid and encouragement to, and/or ratifying and adopting acts of other Defendants, as alleged above." 1AC ¶ 162. These conclusory allegations are insufficient to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. Furthermore, Plaintiff has not specified which alleged torts are the predicate for the conspiracy claim. See Kelly v. Mortgage Electronic Registration Systs., Inc., 642 F. Supp. 2d 1048, 1058 (N.D. Cal. 2009). Therefore, the claim of civil conspiracy is dismissed, with leave to amend.

"Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Saunders v. Sup. Ct., 27 Cal. App. 4th 832, 846 (1994). Aiding and abetting does not require an agreement, but simply assistance. Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 78 (1996). Like conspiracy, the basis for liability for aiding and abetting is concerted wrongful action. Id.

Plaintiff's cause of action for aiding and abetting alleges that Defendants "gave substantial assistance and encouragement to one or more of the intentionally tortious actions of other Defendants alleged hereinabove, with knowledge that the other Defendants' conduct constitutes a wrongful action, and did so by, inter alia, cooperating with each other, assisting each other, and/or failing to conduct themselves in a fashion requisite to protect Plaintiff's interests or to avoid any adverse effect on Plaintiff where the other Defendants had a fiduciary duty to Plaintiff." 1AC ¶ 167. These conclusory allegations fail to indicate how or what Defendants aided and abetted. Therefore, the claim of aiding and abetting is dismissed, with leave to amend.

Defendants also argue that, because Plaintiff alleges that all Defendants did all the wrongful acts, the concepts of liability through conspiracy or aiding and abetting is unnecessary.  However, a complaint may contain alternative theories of relief.  Therefore, the conspiracy and aiding and abetting allegations are not dismissed on this ground.

III. Motion to Strike

Defendants argue that the portions of Plaintiff's fifth cause of action for unfair competition that are based on a copyrighted work are preempted by the Copyright Act, 17 U.S.C. § 301(a), and should be stricken.  They also argue that portions of the eighth cause of action for unfair competition should be stricken because they are preempted by CUTSA.  Without addressing the merits of Defendants' motion, Plaintiff argues that the motion should be denied because striking these allegations would be tantamount to dismissing the claims on which they are based.  These allegations are stricken, and Plaintiff is granted leave to amend to remedy the noted deficiencies.

A. Preemption by Copyright Act

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  Two conditions must be satisfied for the Copyright Act to preempt a state law cause of

action: (1) "'the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103'" and (2) "'the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act.'" Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting Downing & Abercrombie & Fitch, 265 F.3d 994, 1003 (9th Cir. 2001)).

The "equivalent rights" prong of the test requires a court to consider whether the state claim asserts rights

> within the general scope of copyright as specified by section 106 of the Copyright Act. Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display. To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action.

Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1143 (9th Cir. 2006).

In its third cause of action for copyright infringement, Plaintiff alleges that it owns a copyright for software which collaborates with its hardware circuitry and microchips to produce the interface of its touch screen products. 1AC ¶ 59. Plaintiff alleges that Qi, ZaagTech and Jinpeng Li infringed its copyright by "copying, reproducing, adapting, distributing, and otherwise using the copyrighted material of PQ Labs' multi-touch system software in touch screen products developed and offered for sale by ZaagTech." 1AC ¶ 60. Furthermore, this cause of action

United States District Court
For the Northern District of California

incorporates previous allegations of the 1AC, in particular paragraph 23, which alleges that Qi and ZaagTech copied "PQ Labs' FPGA software, driver code, and ARM processor code registered with the Copyright Office in its touch screen products designed and manufactured after the establishment of ZaagTech."

Plaintiff's fifth cause of action for unfair competition is premised almost entirely on Defendants' misappropriation of Plaintiff's trade secrets, and as such is preempted by CUTSA.  One sentence in paragraph 72 mentions infringement:  "The motivation, reasons, justifications, and actions behind said Defendants' infringement and misappropriation evince a desire to develop a business to compete in the touch screen business against PQ Labs while not expending the work necessary to achieve independent success lawfully and fairly."  To the extent that Plaintiff is alleging unfair competition based upon Defendants' infringement of copyrighted material, the allegation meets the first requirement for preemption in that it falls within the subject matter of the Copyright Act.  To the extent that it is without an extra element that changes the nature of the action, it meets the second requirement for copyright preemption.

Therefore, the allegation regarding infringement in the fifth cause of action is preempted by the Copyright Act and is stricken. Plaintiff is granted leave to amend to show that its allegation of infringement does not meet the requirements for preemption, if it truthfully can do so.

**United States District Court**
For the Northern District of California

B. Preemption by CUTSA

Paragraph 86 of Plaintiff's eighth cause of action for unfair competition is based, in part, on the allegation that Jinpeng Li wrongfully transmitted to Qi, at Qi's urging, "certain PQ Labs confidential, trade secret computer files containing schematics and design drawings for the newest circuitry and hardware and software for PQ Labs touch screen prototypes." As discussed previously, Plaintiff's second cause of action for misappropriation of trade secrets alleges that Defendants misappropriated its confidential designs and drawings for hardware, circuitry and microchips as well as its multi-touch software code for its touch screen products. 1AC ¶ 51. Thus, the allegation in paragraph 86 is premised upon the same nucleus of facts as the second cause of action for misappropriation of trade secrets, and is stricken as preempted by CUTSA. Plaintiff is granted leave to amend to remedy this deficiency, if it truthfully can do so.

IV. Nguyen's Motion to Dismiss for Improper Venue

Nguyen moves to dismiss all the claims against him for improper venue based on the fact that his written employment agreement with Plaintiff promised that a California state court, not a federal court in California, would be the only court to hear disputes relative to the employment agreement. Plaintiff argues that the forum selection clauses in the employment agreement and the confidentiality agreement do not require it to bring suit

against Nguyen in a California state court, but allows suit in a federal court in California.

The facts that are relevant to this motion are as follows. When Plaintiff hired Nguyen in May 2010 as a sales and account manager in its San Jose, California office, he signed an Employment Agreement and an Employee Confidentiality Agreement, both dated May 28, 2010. The Employment Agreement specifies the terms of Nguyen's employment with Plaintiff, such as his salary. Paragraph D of the Employment Agreement provides that Nguyen must keep confidential Plaintiff's proprietary information specified in that paragraph. Section S of the Employment Agreement, entitled, "Exclusive Jurisdiction for Suit in Case of Breach," provides:

> The Parties, by entering into this agreement, submit to the jurisdiction in the State of California for adjudication of any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of State of California shall have exclusive jurisdiction over any disputes between the parties relative to this agreement, whether said disputes sounds [sic] in contract, tort, or other areas of the law.

The Employee Confidentiality Agreement also contains a forum selection clause, entitled, "Jurisdiction and Venue," which provides:

> In case of any dispute hereunder, the parties will submit to the exclusive jurisdiction and venue of any court of competent jurisdiction sitting in Santa Clara County, California, and will comply with all requirements necessary to give such court jurisdiction over the parties and the controversy.

Employee Confidentiality Agreement, ¶ 14.8.

24

A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636.  When interpreting a contract, the whole of a contract is to be taken together, so as to give effect to every part, each clause helping to interpret the other.  Cal. Civ. Code § 1641.  "It is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." De Guere v. Universal City Studios, Inc., 56 Cal. App. 4th 482, 501 (1997).  First, the court provisionally receives all credible evidence concerning the parties' intentions to determine if there is an ambiguity.  Id.  If, in light of the extrinsic evidence, the court determines the language of the contract is ambiguous, the extrinsic evidence is admitted to aid in the second step: interpreting the contract.  Id.

Here, the two forum selection clauses read together appear to be ambiguous, but the parties do not submit extrinsic evidence to aid in the determination of their intent at the time the agreements were signed.  Therefore, the Court must resolve the ambiguity solely on the agreements themselves.

The parties agree that, in general, federal law governs the interpretation of the forum selection clauses in the Employment Agreement and the Employment Confidentiality Agreement because this is a diversity case.  See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988) (in diversity cases,

federal procedural issues raised by forum selection clauses
significantly outweigh state interests).  However, as
Plaintiff points out, both agreements contain provisions that
California law should govern the interpretation of the agreements.
Whether federal or California law applies here is not
determinative of the outcome because federal courts interpreting a
contract under federal law look for guidance to general principles
for interpreting contracts.  Doe 1 v. AOL LLC, 552 F.3d 1077, 1081
(9th Cir. 2009).

The parties agree that the phrase, "the courts of State of
California," in the second sentence of Section 8 of the Employment
Agreement, provides that the forum for disputes shall be the state
courts of California.  This is a correct interpretation of this
phrase; the Ninth Circuit has interpreted the language, "of the
court of a specific state," to mean that jurisdiction is proper in
the courts of the state specified, not in the federal courts
located in that state.  Id. at 1082.

The parties also agree that the phrase, "any court of
competent jurisdiction in the county of Santa Clara," in the forum
selection clause in the Employee Confidentiality Agreement permits
venue in either state or federal courts located in Santa Clara
County.  However, this case is pending in the Oakland division of
this Court, which is located in Alameda County; therefore, the
forum selection requirement of the Employee Confidentiality
Agreement is not satisfied.

United States District Court
For the Northern District of California

In Simonoff v. Expedia, Inc., 643 F.3d 1202, 1206 (9th Cir. 2011), the court interpreted the phrase, "in the court in King County," to refer to both federal as well as state courts located in King County because, when a federal court sits in a particular county, the district court is undoubtedly "in" that county.  The court explained that the preposition, "in," denoted geographic limitation; thus, the phrase, "courts in" a particular state, includes any court within the physical boundaries of the state, which would include both state and federal courts located in that state.  Id.

Simonoff does not apply here because, for this intellectual property case, there is no federal court that sits only in Santa Clara County.  The Northern District of California has three divisions, but parties in intellectual property actions have no right to venue in a particular division.  See Local Civil Rule 3-2(a) (actions in the excepted categories, including intellectual property, shall be assigned on a district-wide basis).  This case is an example of the inter-district assignment of actions; Plaintiff filed it in the San Jose division, which is located in Santa Clara County, but it was assigned to the Oakland division of the Court, which is located in Alameda County.  Therefore, even though Plaintiff filed this action in the San Jose division, it has not been able to keep it there.  Thus, there is no federal court that can meet the forum selection requirements of the Confidentiality Agreement.

Further, the two forum selection clauses are not inconsistent. If claims under the Employment Agreement can be brought only in state court, even if claims under the Confidentiality Agreement could be brought in state or federal court, the forum selection clauses are in harmony when all the claims are brought in state court. In addition, because the Employment Agreement contains a confidentiality clause, all of Plaintiff's causes of action against Nguyen are "relative" to that agreement. In contrast, some of the causes of action, such as breach of fiduciary duty, which relies upon the Employment Agreement to create a duty, do not arise under the Employment Confidentiality Agreement.

Relying on the statutory rule that the whole of a contract should be taken together to give meaning to every part, the Court concludes that the two agreements should be read together. The forum selection clause in the Employment Agreement means that the parties shall litigate claims relative to the Employment Agreement in a California state court. The forum selection clause in the Employee Confidentiality Agreement means that the parties shall litigate claims under that agreement in a court of competent jurisdiction located in Santa Clara County. Because there is no federal court that is located solely in Santa Clara County, the claims based on the Confidentiality Agreement must be litigated in state court in Santa Clara County.

Therefore, Nguyen's motion to dismiss is granted.  Dismissal is without prejudice for Plaintiff to re-file its claims against Nguyen in Santa Clara County Superior Court.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss under Rule 12(b)(6) is granted, in part.  The following claims are dismissed, with leave to amend, based on CUTSA preemption: claims 4 and 5 for unfair competition; claim 11 for tortious interference with prospective economic advantage; and claim 13 for breach of fiduciary duty.  Claims 13 and 15 for breach of fiduciary duty against Qi are dismissed with leave to amend for failure to allege a fiduciary relationship between Qi and Plaintiff.  The allegations of the claims of civil conspiracy and aiding and abetting are dismissed with leave to amend.  Claim 9 for fraud against Qi is dismissed with leave to amend.  The following claims are not dismissed:  claim 1 for misappropriation of trade secrets against Qi and Zaagtech;  claim 2 for misappropriation of trade secrets against Qi, Zaagtech and Jinpeng Li; claim 3 for copyright infringement against Qi, Zaagtech and Jinpeng Li; claim 6 for unfair competition against Qi; claim 7 for violation of California Penal Code section 502 against Qi, Zaagtech and Jinpeng Li; claim 8 for unfair competition against Qi and Zaagtech; claim 10 for tortious interference with contract and prospective economic advantage against Qi; claim 14 for breach of contract against Jinpeng Li; claim 16 for conversion against Qi; claim 17 for

trespass to chattels against Qi, Zaagtech and Jinpeng Li; and

claim 18 for violation of the computer fraud and abuse act against

Qi and Zaagtech.  Defendants' motion to strike is granted in

regard to the specific allegations in claims 5 and 8 and Plaintiff

is granted leave to amend to remedy the deficiencies noted.

Nguyen's motion to dismiss for improper venue is granted.

Dismissal of the claims against Nguyen is without prejudice to re-

filing them in Santa Clara County Superior Court.  Plaintiff may

wish to dismiss its claims against all Defendants so that it may

litigate all its claims together in state court.

    IT IS SO ORDERED.


Dated:  6/7/2012                    _____
                                    CLAUDIA WILKEN
                                    United States District Judge