OTTO O. LEE, CA Bar No. 173987
olee@iplg.com
KEVIN VIAU, CA Bar No. 275556
kviau@iplg.com
BONNIE WOLF, CA Bar No. 284872
bonniewolf@iplg.com
INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113
Telephone: (408) 286-8933
Facsimile: (408) 286-8932

STEVEN A. ELLENBERG, CA Bar No. 151489
steve@ellenberglawoffices.com
LAW OFFICES OF STEVEN A. ELLENBERG
4 North Second Street, Suite 1240
San Jose, California 95113
Telephone: (408) 998-8500
Facsimile: (408) 998-8503

Attorneys for Plaintiffs PQ LABS, INC. and
SHANGHAI PINQI DIGITAL TECHNOLOGY CO., LTD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PQ LABS, INC., a California corporation, and SHANGHAI PINQI DIGITAL TECHNOLOGY CO., LTD., a Chinese corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>YANG QI, an individual, ZAAGTECH INC., a Chinese corporation, JINPENG LI, an individual, and HAIPENG LI, an individual,<br><br>      Defendants. | Case No.:  12-cv-00450-CW<br><br>**3rd AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE, DECLARATORY, AND OTHER RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs PQ Labs, Inc. and Shanghai PinQi Digital Technology Co., Ltd. (collectively, "Plaintiffs"), for their 3rd Amended Complaint against Yang Qi, ZaagTech Inc., Jinpeng Li, and Haipeng Li, allege as follows:

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

## PARTIES

1.      Plaintiff PQ Labs ("PQ Labs") is a California corporation with its principal place of business at 2150 Trade Zone Boulevard, Suite 104, San Jose, CA 95131.

2.      Plaintiff Shanghai PinQi Digital Technology Co., Ltd. is a Chinese corporation and wholly-owned subsidiary of PQ Labs with its principal place of business at 10/F, No. 11 Lane 4666, Gonghexinlu, Zhabei District, Shanghai, China. Shanghai PinQi Digital Technology Co., Ltd. is listed in Chinese characters as "上海品奇数码科技有限公司." Shanghai PinQi Digital Technology Co., Ltd. is sometimes referred to by the shorthand "PinQi" as "PinQi" is the Chinese translation of "PQ." In this 3rd Amended Complaint ("Complaint"), Shanghai PinQi Digital Technology Co., Ltd. shall also be referred to as "PinQi."

3.      PQ Labs and PinQi are also referred to individually as a "Plaintiff" and collectively as the "Plaintiffs" herein.

4.      On information and belief, Yang Qi is an individual residing in China who has done business, including wrongful actions alleged herein, in the State of California and in this District.

5.      On information and belief, ZaagTech Inc. ("ZaagTech") is a Chinese corporation with its principal place of business at 699 Qingtong Road, Huzhou, Zhejiang, China, which has done business, including wrongful actions alleged herein, in the State of California and in this District.

6.      On information and belief, Jinpeng Li is an individual residing in China who has done business, including wrongful actions alleged herein, in the State of California and in this District.

7.      On information and belief, Haipeng Li is an individual residing in California who has done business, including wrongful actions alleged herein, in the State of California and in this District.

8.      Yang Qi, ZaagTech, Jinpeng Li, and Haipeng Li shall also be referred to individually as a "Defendant" and the named "Defendants" herein.

## JURISDICTION

9.      This is a civil action presenting claims for, *inter alia*, copyright infringement arising under the copyright laws of the United States, Title 17 of the United States Code, the Copyright Act, trademark infringement, false advertising, and unfair competition under the trademark laws of the

United States, Title 15 of the United States Code, the Lanham Act, and violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Thus, the Court has subject matter jurisdiction over the claims of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     Further, this is a civil action presenting claims for, *inter alia*, misappropriation of trade secrets, unfair competition, fraud, breach of contract, tortious interference with prospective economic advantage, conversion, trespass to chattels, and violation of Cal. Pen. Code § 502, all arising under the laws of the State of California.  All California state law claims alleged herein arise under the same nucleus of operative facts as the federal causes of action, and are therefore part of the same case or controversy as the federal causes of action.  Accordingly, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     The Court has personal jurisdiction over Defendants because each Defendant has maintained certain minimum contacts with California such that the exercise of jurisdiction over each Defendant would not offend traditional notions of fair play and substantial justice.

## VENUE

12.     Venue in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this action occurred here.

## INTRADISTRICT ASSIGNMENT

13.     This is an Intellectual Property Action subject to district-wide assignment in San Francisco, Oakland, or San Jose pursuant to Local Rule 3-2(c).

## FACTUAL BACKGROUND

14.     PQ Labs is a corporation engaged in the business of designing, developing, manufacturing, and selling computer touch screen products, and was organized under the laws of the State of California on or about November 17, 2008.  PQ Labs, in conjunction with its subsidiary PinQi, designs, develops and produces both hardware and software for its touch screen products.

15.     PQ Labs authored software and registered with the United States Copyright Office the work entitled PQ Labs MultiTouch System Software as Registration No. TXu 1-620-335.  The software embodied in this copyright registration works with PQ Labs hardware circuitry and

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12ᵗʰ Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

microchips to produce the user interface of its touch screen products.  A copy of the registration is attached hereto as Exhibit A.

16.     In or around 2009, PQ Labs employed Yang Qi to work in its San Jose, California office as a sales representative and account manager, handling, among other things, sales of PQ Labs products.  In this capacity, Yang Qi acted for the benefit of PQ Labs during his time as account manager, overseeing PQ Labs customer accounts, handling sales of PQ Labs touch screen products for profit to PQ Labs, and completing orders between PQ Labs and its customers.  Yang Qi worked at PQ Labs' office in San Jose, California and had access to PQ Labs customer information, and PQ Labs controlled the assignments on which Yang Qi worked and accounts Yang Qi handled.  PQ Labs additionally sponsored Yang Qi's work visa.

17.     In or around 2009, PQ Labs' subsidiary PinQi engaged Jinpeng Li to join its operations and work as an engineer designing hardware for its touch screen products.  On or about June 3, 2009, Jinpeng Li signed an Employment Contract and Employee Rules and Confidentiality Agreement with PinQi.  Copies of these contracts are attached hereto as Exhibit B.   Section 4 of the Employee Rules and Confidentiality Agreement calls for Jinpeng Li, as employee, to protect the confidentiality of company information and trade secrets, including specifically customer information and drawings and diagrams of products and software in development.  During his employment with PinQi, Jinpeng Li obtained detailed, confidential information and working knowledge of PQ Labs' products, including information regarding hardware and circuitry design, and software code which constitute trade secrets under California's trade secret laws.

18.     In or around January 2010, Yang Qi devised and began implementation of a plan to use his access to and thereby misappropriate Plaintiffs' confidential information, including customer contacts obtained from PQ Labs through his work at PQ Labs and hardware designs and software code, in order to create his own computer touch screen business in direct competition with PQ Labs, poach PQ Labs customers, interfere with PQ Labs business and divert the same to ZaagTech for Defendants' commercial gain.  Yang Qi, having expressed displeasure that he was not being paid by PQ Labs in accordance with his self-assessed worth, included in his elaborate plan the modality of creating a sham, unauthorized distributor company to siphon sales from PQ Labs to said distributor

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

company and also to establish a separate company designing, producing, and selling touch screen products to directly compete with PQ Labs.  The foregoing scheme is hereinafter referred to generally as the "Plan."

19.     In or about January 2010, Yang Qi contacted Jinpeng Li and solicited and obtained Jinpeng Li's agreement to participate in, assist, encourage, and/or otherwise support the Plan. Among other things, during Internet chat conversations, Jinpeng Li shared with Yang Qi at Yang Qi's urging certain of Plaintiffs' confidential, trade secret computer files containing schematics and design drawings for the newest circuitry and hardware for PQ Labs touch screen prototypes and multi-touch software code (collectively, the "Trade Secrets").  These Trade Secrets pertained to products still in development in PQ Labs' labs and not yet in manufacture or available to the public or the touch screen industry.  At all times material hereto, Plaintiffs made reasonable efforts to preserve the confidentiality of the Trade Secrets that Jinpeng Li wrongfully transmitted to Yang Qi.

20.     Also in or about January 2010, Yang Qi contacted his acquaintance Qiang Ma to solicit and did in fact obtain his agreement to participate in, assist, encourage, and/or otherwise support the Plan, including the idea of producing touch screen products and offering Qiang Ma an opportunity to go in on the business with him.  Among other things, during Internet chat conversations, Yang Qi told Qiang Ma that he had obtained the Trade Secrets.  In addition, Yang Qi sent to Qiang Ma copies of at least four confidential Plaintiffs files containing hardware and circuitry designs.  Qiang Ma agreed to work on the software algorithm corresponding to the hardware and circuitry in order to produce the competitive touch screen products.

21.     Also in or about January 2010, Yang Qi contacted Haipeng Li to solicit and did in fact obtain Haipeng Li's agreement to participate in, assist, encourage, and/or otherwise support the Plan, in particular discussing the idea of creating a distributorship to divert customers away from buying from PQ Labs directly and instead to buy from Yang Qi's distributorship.  Yang Qi instructed Haipeng Li, and Haipeng Li agreed, to register a company to serve as the nominal distributor, set up a bank account for the company, and set up a website for the company.  Haipeng Li stated that they should be careful in setting up and operating the company as they would be taking

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1  customers away from PQ Labs, and that Yang Qi should take care not to let his boss find out.  Yang

2  Qi and Haipeng Li agreed to split profits from the distributorship on a 70/30 basis.

3       22.    As part of the Plan, MultiTouch Group LLC was established in Delaware on or about

4  January 27, 2010 as the distributorship company to be used to compete and interfere with PQ Labs'

5  business.  Among other things, MultiTouch Group LLC would exist simply to sit and wait for a

6  customer to contact PQ Labs with an order, receive the order diverted from PQ Labs by Yang Qi,

7  and subsequently fulfill the order and receive the retail price from the customer while giving to PQ

8  Labs a much lower wholesale cut of the payment for its role in producing the product.  When

9  customers contacted PQ Labs for ordering information, Yang Qi directed the customers to

10  MultiTouch Group LLC without PQ Labs' authorization, and the customers made payment to

11  MultiTouch Group LLC instead of PQ Labs.  A passive, shell vehicle for the Plan, MultiTouch

12  Group LLC undertook no affirmative action during its existence to seek out new customers or find

13  new business, nor was it ever authorized by PQ Labs to act as its distributor.  PQ Labs did not have

14  knowledge of the creation of MultiTouch Group LLC or its actions in dealing with PQ Labs

15  customers and misdirecting orders until it terminated Yang Qi's position with the company.

16       23.    In or around January 2010, in furtherance of the Plan, Jinpeng Li wrongfully provided

17  to Yang Qi, and Yang Qi accepted, copies of Plaintiffs' confidential field-programmable gate array

18  (FPGA) microchip and FPGA microchip controller code, as well as driver code and ARM processor

19  code, of course without Plaintiffs' knowledge or authorization.  Also in furtherance of the Plan,

20  Yang Qi subsequently sent copies of this PQ Labs code to his acquaintance Bin Liang, who accepted

21  this trade secret information via Internet chat to incorporate into competing touch screen products.

22       24.    On information and belief, in furtherance of the Plan, Yang Qi and his company

23  ZaagTech agreed to and did in fact copy PQ Labs' FPGA software, driver code, and ARM processor

24  code registered with the Copyright Office in its touch screen products designed and manufactured

25  after the establishment of ZaagTech.  With the development of later products, Yang Qi and

26  ZaagTech have also been producing derivative works of PQ Labs' software registered with the

27  Copyright Office, using the modified software in subsequent touch screen products.

28

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

25.     On or around February 8, 2010, Yang Qi sent an email to a PQ Labs customer to contact MultiTouch Group LLC in order to process payment of the sale of a PQ Labs product.  Prior to Yang Qi's misdirection of this sale, said customer was not a customer of MultiTouch Group LLC, and this customer had originally contacted PQ Labs directly for purposes of ordering a PQ Labs product.  Yang Qi acted to divert the sale of a PQ Labs touch screen product from PQ Labs to MultiTouch Group LLC, selling the product to this customer for $3,300.  Yang Qi paid $2,650 to PQ Labs, presumably for the product sold to this customer, keeping the difference of $650 for himself and Haipeng Li.  MultiTouch Group LLC's action in selling PQ Labs' product to the customer and acting as an intermediary was without authorization or knowledge of PQ Labs and, on information and belief, was done in furtherance of the Plan to establish Multitouch Group LLC as a player in the touch screen business.

26.     Also in furtherance of the Plan, in or about February 2010, Yang Qi wrongfully diverted to MultiTouch Group LLC emails from two PQ Labs customers requesting to purchase PQ Labs products.

27.     In or about April 2010, PQ Labs became suspicious that Yang Qi was misappropriating company trade secrets.  On or around April 26, 2010, PQ Labs terminated Yang Qi's services, thereby frustrating his ability to misdirect sales leads from PQ Labs to MultiTouch Group LLC.

28.     After having his position terminated by PQ Labs, Yang Qi persisted in the Plan to co-opt PQ Labs business and directly compete with PQ Labs in the touch screen business by returning to China to continue the esablishment and running of the company ZaagTech in or about 2010.

29.     On or around August 10, 2010, a certificate of cancellation for MultiTouch Group LLC was filed in Delaware, indicating that the company was no longer doing business.  *See* Exhibit C.

30.     In part to replace Yang Qi, PQ Labs hired Andy Nguyen in or about May 2010 as a sales and account manager.  Andy Nguyen signed both an Employment Agreement and an Employee Confidentiality Agreement, each dated May 28, 2010, when he joined PQ Labs at its San Jose, California office.  Copies of the contracts are attached hereto as Exhibit D.  Section D of the

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

Employment Agreement provides, among other things, that the employee Andy Nguyen shall not disclose any confidential information of the employer PQ Labs during his employment or for a period of three years after termination of employment.  Included in the definition of confidential information in Section D of the Employment Agreement are information regarding PQ Labs' business methods, and sales information of any kind, including trade secrets such as, *inter alia*, customers lists or related customer information.  Section J of Andy Nguyen's Employment Agreement states that in the event of breach of the contract provisions on confidentiality, PQ Labs shall be entitled to enjoin Andy Nguyen from continuing such a breach, to seek damages, and obtain indemnification for attorney's fees incurred in such enforcement.

31.    Section 1 of the Employee Confidentiality Agreement states that Andy Nguyen shall not disclose any of PQ Labs' proprietary information and shall hold such information in strict confidence.  This agreement defines proprietary information to include trade secrets and information regarding suppliers and customers.  Section 12 of the Employee Confidentiality Agreement provides PQ Labs the right to enforce the contract against Andy Nguyen in the event of breach by injunction, specific performance, and recovery of damages.  Section 14.5 holds that the Agreement shall survive the termination of Andy Nguyen's employment, meaning Andy Nguyen could not disclose proprietary information even after leaving his post at PQ Labs.

32.    In or about June 2011, Andy Nguyen left his employment at PQ Labs.  Prior to leaving PQ Labs, Andy Nguyen copied all accessible company files onto a personal portable hard drive, and became derelict in his duties of fulfilling and reporting on sales orders of PQ Labs products.

33.    Beginning just before or about June 2011, around the time of Andy Nguyen leaving PQ Labs, PQ Labs' customers and key distributors were solicited via email by ZaagTech in furtherance of the Plan.  In each case ZaagTech offered its "own" touch screen products for sale, though the customers had never been contacted by ZaagTech before, had never provided contact information to ZaagTech, and had no idea who ZaagTech was and asked PQ Labs officers if they had heard of ZaagTech.  Quite plainly, ZaagTech was wrongfully utilizing PQ Labs' trade secret customer information which had been wrongfully misappropriated by ZaagTech and those other

1   Defendants named herein who were participating in, assisting, encouraging, and/or otherwise

2   supporting the Plan, as alleged herein.

3        34.    On or around November 30, 2010, ZaagTech, using the email address of one Lobo

4   Yan, contacted a PQ Labs customer in an effort to offer ZaagTech's products for sale.  That

5   customer was not publicly known to be a customer of PQ Labs, had never given contact information

6   to ZaagTech, and had never heard of ZaagTech prior to the solicitation.  Once again ZaagTech was

7   wrongfully utilizing PQ Labs' trade secret customer information that was wrongfully

8   misappropriated by ZaagTech and those other Defendants named herein who participated in,

9   assisted, encouraged, and/or otherwise supported the Plan.

10        35.    On or around December 19, 2010, and in furtherance of the Plan, Lobo Yan at

11   ZaagTech sent a solicitation email to PQ Labs' actual distributor in the Middle East.  Said distributor

12   was not publicly known to be a distributor of PQ Labs, had never given contact information to

13   ZaagTech, and had never heard of ZaagTech prior to the solicitation.  This customer information

14   was PQ Labs' trade secret.

15        36.    On or about January 6, 2011, and in furtherance of the Plan, Lobo Yan at ZaagTech

16   sent a solicitation email to another customer of PQ Labs that uses PQ Labs technology in its own

17   products.  That customer was not publicly known to be a customer of PQ Labs, had never provided

18   ZaagTech with contact information, and had never heard of ZaagTech prior to the solicitation.  This

19   customer information was PQ Labs' trade secret.

20        37.    On or around January 9, 2011, Lobo Yan at ZaagTech sent yet another solicitation

21   email, this time to PQ Labs' actual distributor in the U.S.  This distributor was not publicly known to

22   be a distributor of PQ Labs, had never provided contact information to ZaagTech, and had never

23   heard of ZaagTech prior to the solicitation.  This customer information was PQ Labs' trade secret.

24        38.    On information and belief, in or about June 2011 or just before, Andy Nguyen

25   disclosed PQ Labs' trade secrets in the form of confidential customer lists to Yang Qi and ZaagTech

26   in exchange for monetary or other compensation.  Yang Qi and ZaagTech subsequently used these

27   customer lists to directly contact PQ Labs customers in an effort to lure customers from PQ Labs and

28   to ZaagTech.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

39.     On or about August 29, 2011, PQ Labs' distributor in Europe was contacted by email by Lobo Yan at ZaagTech marketing ZaagTech's touch screen products.  That distributor was not publicly known as a distributor of PQ Labs, had never given contact information to ZaagTech, and had never heard of ZaagTech prior to the email solicitation.  This customer information was PQ Labs' trade secret.

40.     On or around November 30, 2011, Lobo Yan at ZaagTech solicited business from a PQ Labs customer.  The solicitation email chain between ZaagTech and that customer shows Yang Qi as a member of the ZaagTech team, and inadvertently was sent to Yang Qi's email address at PQ Labs.  That customer was not publicly known to be a customer of PQ Labs, had not provided contact information to ZaagTech, and had not heard of ZaagTech prior to the email solicitation.  This customer information was PQ Labs' trade secret.

41.     On information and belief, Yang Qi, ZaagTech, and Jinpeng Li have sent several phishing emails to PQ Labs seeking to extract further confidential and proprietary information from PQ Labs' networks.  Among other things, on or about January 27, 2011, an email was sent to PQ Labs CEO Frank Lu requesting help with a file attachment.  On or about January 25, 2011, an email was sent to Frank Lu requesting information regarding a username and password.  On or about April 1, 2011, an email was sent to PQ Labs' engineers, U.S. sales team, and China sales team regarding a touch screen trade show.  On or about April 22, 2011, an email was sent to PQ Labs' support address by a sender purporting to be a PQ Labs customer in Singapore.  On or about April 22, 2011, an email was sent to Wei Lu, manager at PQ Labs' San Jose office, by a sender purporting to be a PQ Labs customer in Japan.  On or about December 13, 2011, an email containing a resignation letter was sent to Frank Lu by a sender purporting to be a PQ Labs employee.  The emails made reference to information that only a PQ Labs employee or former employee would know.  On information and belief, these phishing emails contained computer viruses and Trojans that infected PQ Labs computers on at least one occasion and afforded Defendants access to PQ Labs' proprietary information upon being opened by their recipients, and caused damage to PQ Labs' networks.

42.     PQ Labs lawfully and properly owns valuable rights in the trademark PQ LABS, and has obtained substantial goodwill in the trademark as a result of PQ Labs' extensive and continuous

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

use in interstate commerce of the mark since at least as early as December 1, 2008, by, *inter alia*, advertising and promoting of PQ Labs products using the mark, and selling products bearing the mark.  Additionally, PQ Labs lawfully and properly owns a U.S. federal trademark registration for the mark PQ LABS, Registration No. 4075660, in International Class 009 for, *inter alia*, "Computer monitors; Computer peripheral devices; Computer touchscreens; Digital signage monitors; Input devices for computers; Touch panels; Computer whiteboards."  A copy of the certificate of registration for U.S. Registration No. 4075660 is attached hereto as Exhibit E.  The United States Patent and Trademark Office ("USPTO") registered PQ Labs' PQ LABS trademark on December 27, 2011.  PQ Labs uses the PQ LABS mark in interstate commerce on and in connection with its touch screen products, and marketing and sale of said touch screen products, among other things. *See* Exhibit F.

43.     On information and belief, Defendant ZaagTech is holding itself out in the online marketplace as a supplier or manufacturer of touch screen products for PQ Labs and using the PQ LABS mark and brand.  On several websites, including tradevv.com and hisupplier.com, on information and belief, Defendant asserts it is a manufacturer or exporter of PQ Labs touch screen products, suggesting a connection with PQ Labs that does not exist.  *See* Exhibit G.  Further, Defendant is using the mark and brand PQ LABS to advertise and offer for sale ZaagTech touch screen products, thereby misleading consumers into believing they may purchase PQ Labs-related and PQ Labs-affiliated products from ZaagTech.  On one website, Defendant asserts that ZaagTech is "PQ labs manufacturer and exporter in China."  On another website, Defendant holds out that ZaagTech is "China PQ labs Manufacturer."  On information and belief, Defendant has caused these assertions and this use of the PQ LABS mark and brand to enter into interstate commerce by posting the aforesaid unlawful advertising and assertions on websites which are accessible to consumers throughout the U.S., and which direct consumers to a means of purchasing ZaagTech products.  PQ Labs has never authorized or otherwise utilized ZaagTech to operate as its manufacturer, and PQ Labs has never authorized ZaagTech to use the PQ LABS name or brand in connection with ZaagTech's sale, advertising, or promotion of ZaagTech touch screen products or in any other

1    respect.  Based on the foregoing, Defendant's use of the mark PQ LABS will undeniably create the

2    likelihood of confusion amongst consumers.

3    44.    As a result of Defendants' actions in pursuing the Plan to establish a competing

4    business by using PQ Labs' trade secrets, copyrights, trademarks, and proprietary design

5    information, PQ Labs has had to lower the prices of its products and has also lost customers, all

6    causing significant economic damage to PQ Labs.  Among other things, and as a direct result of the

7    undercutting by ZaagTech and the Defendants identified herein as participating in the Plan, PQ Labs

8    was forced to try to mitigate its damages and preserve its very viability by lowering prices by 30%

9    starting in August 2011 and continuing through the present.  For the fiscal year 2011, PQ Labs'

10   gross profits have substantially declined as a result of the actions of Yang Qi and ZaagTech and the

11   other Defendants identified above who have participated in, assisted, encouraged, and/or otherwise

12   supported the Plan.

13   **CLAIM 1 FOR MISAPPROPRIATION OF TRADE SECRETS**

14   **BY PQ LABS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI**

15   45.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 44 of this

16   Complaint as though fully set forth herein.

17   46.    PQ Labs owned customer lists and information for its products from which it

18   obtained independent economic value from the fact that, among other things, said lists and

19   information were not generally known to the public or to the touch screen industry and PQ Labs

20   utilized this trade secret information to sell its products to customers, generate revenues, and

21   generate profits.  In this further regard, the confidential lists provided PQ Labs with the economic

22   benefit of having a pool of known customers to which it could sell and market its products without

23   interference from competitors, and about which it owned ready-to-use pricing and sales strategies

24   and information.

25   47.    PQ Labs' customer lists and information were not generally known to the public or

26   touch screen industry.  PQ Labs did not publicize its customer lists, and its customers and

27   distributors rebranded PQ Labs products and technology in creating their own products.

28

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

48.     PQ Labs expended reasonable efforts to maintain the secrecy of its customer lists and information by, among other things, requiring employees to sign confidentiality agreements explicitly prohibiting disclosure of customer lists, by limiting the number of employees with knowledge of the customer lists, and by communicating to staff the confidentiality of this information and need to maintain the same.  No more than four individuals had knowledge of PQ Labs' customer lists during the relevant time period.  PQ Labs limited access to the customer lists on a need to know basis.

49.     PQ Labs' therefore owned a valuable trade secret in the form of its confidential customer lists and information related to the customers thereon.

50.     On information and belief, Andy Nguyen misappropriated PQ Labs' trade secret customer information by disclosing the customer lists to Yang Qi and ZaagTech.

51.     On information and belief, ZaagTech, and Yang Qi and Jinpeng Li, officers of ZaagTech, misappropriated PQ Labs' trade secret customer information by taking this information with knowledge that Andy Nguyen had acquired the trade secret by improper means, namely, by breaching his duty as employee of PQ Labs to keep the customer lists secret.  Further, on information and belief, Yang Qi, ZaagTech, and Jinpeng Li misappropriated PQ Labs' trade secret customer information by using the trade secret without PQ Labs' express or implied consent, and because the trade secret was obtained from Andy Nguyen who was under a duty not to disclose the trade secret.

52.     As a result of Andy Nguyen's disclosure and Defendants' acquisition and use of PQ Labs' trade secret, PQ Labs has suffered a loss in customers, sales, revenues, and profits.  Yang Qi and ZaagTech have been able to poach certain of PQ Labs' customers by using PQ Labs' trade secret customer lists to contact such customers.  But for Defendants' misappropriation of the customer lists, PQ Labs' customers would not have been contacted by ZaagTech and PQ Labs would not have lost customers, sales, revenues, and profits as a result of solicitation from ZaagTech.  The damage sustained by PQ Labs as a result of the misappropriation of its trade secrets is ongoing and continuous because ZaagTech continues to contact PQ Labs customers.  PQ Labs is thus entitled to and prays for the relief of, among other things, an injunction preventing ZaagTech from contacting

1   PQ Labs customers, compensatory damages in the amount of business lost as a result of the

2   misappropriation, recovery of Defendants' unjust enrichment as a result of the misappropriation,

3   and punitive damages and attorneys' fees for the Defendants' willful and malicious misappropriation.

### CLAIM 2 FOR MISAPPROPRIATION OF TRADE SECRETS
### BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

6       53.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 52 of this

7   Complaint as though fully set forth herein.

8       54.     Plaintiffs owned the Trade Secrets identified hereinabove, and specifically in

9   Paragraph 19, including confidential designs and drawings for hardware, circuitry, and FPGA

10  microchip, as well as multi-touch software code for its touch screen products.  Prior to Defendants'

11  misappropriation of these Trade Secrets, these designs, drawings, and code were not generally

12  known to the public or the touch screen industry as Plaintiffs did not publicize this information, nor

13  had Plaintiffs begun to manufacture and sell products containing this technology and information.

14  Indeed, portions of the technology embodied in the designs and drawings for hardware and circuitry

15  and software code were still being engineered in Plaintiffs' labs.

16      55.     The Trade Secrets identified hereinabove, including the hardware and circuitry

17  drawings and designs and code, derived independent economic value from not being generally

18  known as they provided Plaintiffs with information not known to competitors that Plaintiffs could

19  incorporate into their products as a pioneer before competitors.  Plaintiffs could thus incorporate

20  superior technology into their products before competitors and gain a competitive advantage,

21  establishing the ability to sell products, generate revenue, and generate profits.

22      56.     Plaintiffs expended reasonable efforts to maintain the secrecy of the Trade Secrets,

23  including the hardware and circuitry designs and drawings and software code, by requiring

24  employees working on these Trade Secrets to sign confidentiality agreements, by password

25  protecting the files and computers containing the relevant designs and drawings, and by

26  communicating to staff the confidentiality of this information and need to maintain the same.

27  Plaintiffs further erected anti-circumvention measures to prevent unauthorized access and use of its

28  Trade Secrets.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

57.     Plaintiffs therefore owned valuable property in the Trade Secrets identified above, including confidential hardware and circuitry designs and drawings and software code.

58.     On information and belief, Jinpeng Li misappropriated Plaintiffs' Trade Secrets by disclosing the designs and FPGA microchip and code to Yang Qi and ZaagTech.

59.     On information and belief, Yang Qi and ZaagTech misappropriated Plaintiffs' Trade Secrets in or around January 2010 by acquiring the same with knowledge that Jinpeng Li had acquired the trade secret by improper means, namely, by breaching his duty to Plaintiffs to keep the designs and code secret.  Further, on information and belief, Yang Qi and ZaagTech misappropriated Plaintiffs' Trade Secrets by using the same without Plaintiffs' consent, and because the Trade Secrets were obtained from Jinpeng Li who was under a duty not to disclose the Trade Secrets.

60.     As a result of Jinpeng Li's disclosure and Yang Qi's and ZaagTech's acquisition and use of Plaintiffs' trade secrets, PQ Labs has suffered a loss in customers, sales, and profit, with related losses to its subsidiary PinQi.  Yang Qi and ZaagTech have been able to create a competing product solely by misappropriating Plaintiffs' Trade Secrets.  Without Jinpeng Li's, Yang Qi's, and ZaagTech's misappropriation of the Trade Secrets including the hardware designs and software, Yang Qi would not have been able to create ZaagTech as a competitor to PQ Labs, and PQ Labs would not have lost sales and profits to ZaagTech, with related losses to its subsidiary PinQi.  The damages sustained by Plaintiffs as a result of the misappropriation of their Trade Secrets is ongoing and continuous because ZaagTech continues to sell competing products incorporating Plaintiffs' Trade Secrets.  Plaintiffs are thus entitled to and pray for the relief of, among other things, an injunction preventing ZaagTech from selling touch screen products which incorporate the Trade Secrets, compensatory damages in the amount of profit lost as a result of the misappropriation, recovery of Yang Qi's, ZaagTech's, and Jinpeng Li's unjust enrichment as a result of the misappropriation, and punitive damages and attorneys' fees for the Defendant's willful and malicious misappropriation.

//

//

//

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

## CLAIM 3 FOR COPYRIGHT INFRINGEMENT

## BY PQ LABS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

61.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.     PQ Labs is the owner of the copyright registered with the Copyright Office as Registration No. TXu 1-620-335.  The software embodied in this copyright registration entitled PQ Labs MultiTouch System Software collaborates with PQ Labs hardware circuitry and microchips to produce the user interface of its touch screen products.  PQ Labs' copyright registered November 9, 2009.  The software subject to the copyright is wholly original to PQ Labs and is copyrightable subject matter.

63.     On information and belief, beginning in or around January 2010, Defendants Yang Qi, ZaagTech, and Jinpeng Li have engaged in copying, reproducing, adapting, distributing, and otherwise using the copyrighted material of PQ Labs' multi-touch system software in touch screen products developed and offered for sale by ZaagTech.  Unless enjoined and restrained, said Defendants' conduct threatens to further infringe PQ Labs' copyright.

64.     PQ Labs has never authorized said Defendants to copy, reproduce, adapt, distribute, or otherwise use its copyright protected multi-touch software, nor derivative works of said software.

65.     Plaintiff is entitled to and prays for the relief of, among other things, an injunction restraining Yang Qi, Jinpeng Li, and ZaagTech and its officers, directors, employees, agents, representatives, and persons acting on their behalf from engaging in further acts of copyright infringement because irreparable harm is imminent as a result of said Defendants' conduct.

66.     Plaintiff is further entitled to recover from said Defendants damages sustained by Plaintiff as a result of their copyright infringement.  PQ Labs is unable to ascertain the extent of monetary damage sustained as a result of said Defendants' infringing activities, but is informed and believes such damage to exceed $75,000.  PQ Labs is also entitled to recover said Defendants' gains, profits, and unjust enrichment obtained as a result of their copyright infringement, as well as statutory damages and attorneys' fees.  PQ Labs is informed and believes Defendants unjust enrichment to exceed $75,000.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

## CLAIM 4 FOR TRADEMARK INFRINGEMENT

## BY PQ LABS AGAINST ZAAGTECH

67.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68.    PQ Labs is the lawful and proper owner of the trademark PQ LABS and U.S. Registration No. 4075660 for the said trademark in International Class 009.  The mark registered on December 27, 2011, and is currently still registered at the USPTO, valid, legally protected, and existing in full force and effect.  *See* Exhibit H.

69.    Defendant ZaagTech has used the PQ LABS mark in the advertising, promotion, and offering for sale of their own products.  On at least the websites tradevv.com and hisupplier.com, Defendant has used the PQ LABS mark in connection with the sale of their touch screen products by asserting that ZaagTech is "PQ labs manufacturer and exporter in China" and "China PQ labs Manufacturer."

70.    Defendant's flagrant use of the PQ LABS mark in advertising, promoting, and offering for sale ZaagTech touch screen products has never been authorized by PQ Labs in any way.

71.    Defendant's use of the PQ LABS trademark is likely to create confusion amongst consumers as to source, origin, affiliation, or sponsorship of the goods as Defendant uses Plaintiff PQ Labs' PQ LABS mark in its entirety and identically to the mark as depicted in standard characters in Registration No. 4075660, and in connection with goods which are identical to those specified in Registration No. 4075660 and for which Plaintiff uses the mark, namely, touch screens, touch panels, and digital signage monitors, among others.

72.    Plaintiff is entitled to and hereby requests an injunction restaining the Defendant from current and future infringement of PQ Labs' trademark and allowing seizure and destruction of Defendant's infringing goods.  Plaintiff is also entitled recovery of attorneys' fees due to Defendants' willful and intentional infringement of PQ Labs' trademark. Defendant acted with knowledge of PQ Labs' rights and intended to infringe the PQ LABS mark and cause confusion amongst consumers as to connection with, and otherwise in respect of, the PQ LABS mark.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

## CLAIM 5 FOR UNFAIR COMPETITION UNDER LANHAM ACT § 43

## BY PQ LABS AGAINST ZAAGTECH

73.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74.    Plaintiff PQ Labs owns the mark PQ LABS and a federal trademark registration for PQ LABS, Registration No. 4075660.  PQ Labs' mark is distinctive for its goods including touch screens, and its registration is valid and in full force and effect.  PQ Labs has continuously used the PQ LABS mark since at least as early as December 1, 2008 to identify the source of the said touch screen products.

75.    Defendant ZaagTech is using the PQ LABS mark and name in its entirety in advertising, promoting, offering for sale, and selling ZaagTech products, stating that ZaagTech is "PQ labs manufacturer and exporter in China" and "China PQ labs Manufacturer" in promotional and advertising materials.  Defendant's statements pertaining to being a manufacturer of PQ Labs are wholly false as PQ Labs has never contracted or authorized ZaagTech to act as its manufacturer, exporter, or in any other respect.

76.    Defendant's use of the PQ LABS mark and false description of ZaagTech being a manufacturer of PQ Labs is likely to cause confusion or mistake, to deceive as to affiliation, connection, or association of Defendant with Plaintiff, and deceive as to source, sponsorship, or approval of Defendant's goods.  By falsely stating that ZaagTech is manufacturer for PQ Labs, Defendant is causing confusion amongst consumers and deceiving consumers, who are likely to believe as a result of Defendant's statements and use of the PQ LABS mark and name that Defendant is affiliated with PQ Labs, is authorized to market and sell its products, and is marketing and selling PQ Labs' products, when none of these are true.  Affiliation, connection, sponsorship, and approval of ZaagTech with PQ Labs and its products is precisely the implication of the false statements.  Consumers are viewing this misinformation in the marketplace and will get the impression of connection between ZaagTech and PQ Labs and its products exactly because Defendant has stated that there is a connection, despite no such connection existing.  Confusion and deception is further stoked by the fact that Defendant sells the same or substantially the same

products as Plaintiff, namely, touch screens, meaning that consumers are more likely to and will in fact believe the false statements of connection put forth by Defendant.

77.     Plaintiff PQ Labs has suffered and continues to suffer irreparable harm from Defendant's unfair competition as consumers have been, and are being, misled into thinking they may obtain PQ Labs' products from the Defendant.  PQ Labs thus seeks and is entitled to an injunction restraining the unfair competition and associated acts of Defendant including, *inter alia*, advertisements and statements of connection and affiliation with PQ Labs and its products. Additionally, the present case is an exceptional one warranting the award of attorneys' fees to PQ Labs.

## CLAIM 6 FOR FALSE ADVERTISING UNDER LANHAM ACT § 43
## BY PQ LABS AGAINST ZAAGTECH

78.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.     Defendant ZaagTech has misrepresented the nature, source, characteristics, qualities, and/or geographic origin of their touch screen products in commercial advertisements by posting that ZaagTech is a manufacturer for PQ Labs, and thus falsely stating that ZaagTech's products are manufactured for and sanctioned by PQ Labs on at least the websites tradvv.com and hisupplier.com.  These website pages contain information about and specifications for ZaagTech touch screen products, advertise ZaagTech touch screen products, and offer the option to buy ZaagTech touch screen products with links for purchasing.  PQ Labs has never authorized ZaagTech to be its manufacturer or exporter or sanctioned ZaagTech's products in any way.

80.     Defendant's false statements of fact regarding its status as manufacturer or exporter for PQ Labs and Defendant's products being manufactured and exported for PQ Labs have the tendency to deceive a substantial segment of the statements' audience because Defendant and PQ Labs operate in the same industry where there is often collaboration between companies, and because the statements are unequivocal in falsely stating an association between Defendant and PQ Labs and their respective products.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

81.     The false and deceptive statements of Defendant are material to and likely to influence the purchasing decisions of consumers because PQ Labs is known in the touch screen industry for producing innovative touch screen products, including its G4 series, G3 series, and Multi-Touch Wall.  PQ Labs has met with market success due to its cutting edge technology and designs.  Defendant is attempting to associate itself with PQ Labs to trade on the good name and goodwill of PQ Labs and ride the coattails of PQ Labs' success in the touch screen market. Consumers will be influenced to purchase ZaagTech touch screens because of the asserted association with the good name of PQ Labs and its products.

82.     Defendant caused the misrepresentations to enter interstate commerce by posting its assertions of connection with PQ Labs on product listing pages on at least tradevv.com and hisupplier.com.  These pages are viewable over the Internet by consumers throughout the U.S., and allow consumers to click links for purchasing the touch screen products from the product listing pages.  Further, Defendant, a Chinese corporation, has caused these misrepresentations to enter the U.S. in foreign trade, which representations are viewable by U.S. consumers.

83.     PQ Labs has already been, and continues to be, injured by Defendant's false statements as PQ Labs has seen a reduction in customers and sales, and has had to lower its prices by 30% starting in August 2011 in order to compete against Defendant's unlawful activities.  PQ Labs will likely sustain further injury as a result of the false statements with continuing diversion of sales to the Defendants, and by lessening of the goodwill associated with PQ Labs' products.

84.     With a reduction in prices and sales, PQ Labs has already suffered, and continues to suffer, irreparable harm from Defendant's false advertising.  Accordingly, PQ Labs requests as relief for, among other things, an injunction preventing further false advertising concerning PQ Labs and its PQ LABS trademark and touch screen products, and requiring a take down of all false advertising posted by Defendant online and anywhere else.  PQ Labs also requests an award of reasonable attorneys' fees as this case is exceptional as defined under the Lanham Act.

//

//

//

3rd Amended Complaint

1

<u>CLAIM 7 FOR FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE § 17500</u>

2

<u>BY PQ LABS AGAINST ZAAGTECH</u>

3       85.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 84 of this

4   Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33

5   through 40, and 45 through 60.

6       86.     As set forth above, Defendant ZaagTech disseminated online advertising and product

7   listings for ZaagTech touch screen products which falsely stated that ZaagTech is a manufacturer or

8   exporter of PQ Labs and its products on the websites tradevv.com and hisupplier.com.  On

9   information and belief, Defendant knew these statements to be false and misleading because there

10  has never been any affiliation of ZaagTech with PQ Labs or its products.

11      87.     These untrue and misleading statements are likely to deceive the public and cause

12  confusion as to source, origin, affiliation, and sponsorship of ZaagTech products by PQ Labs.  The

13  precise implication of the statement that ZaagTech is a manufacturer or exporter of PQ Labs is that

14  consumers will believe there is a commercial relationship between the companies including, among

15  other things, that ZaagTech manufactures and exports PQ Labs products, and thus consumers will be

16  deceived.  As alleged hereinabove, these false statements are critical to the buying decision as PQ

17  Labs is a prominent name in the touch screen industry signaling quality and innovation, which name

18  Defendant is trying to trade upon and thus usurp would-be customers of PQ Labs.

19      88.     PQ Labs has suffered, and continues to suffer, irreparable harm as consumers view

20  the false information disseminatd by Defendant and believe the asserted connection between PQ

21  Labs and ZaagTech, thereby damaging the unique quality of PQ Labs products and reputation of PQ

22  Labs.  PQ Labs is thus entitled to and seeks an injunction restraining all such false advertising being

23  perpetrated by Defendants and requiring a take down of the same.

24

<u>CLAIM 8 FOR UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200</u>

25

<u>BY PQ LABS AGAINST ZAAGTECH</u>

26      89.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 88 of this

27  Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33

28  through 36, and 45 through 60.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

90.     Defendant ZaagTech has committed the acts alleged hereinabove, namely, using the PQ LABS trademark in online marketing and advertisements for ZaagTech touch screen products and online product displays offering for sale ZaagTech touch screen products without authorization by PQ Labs, and falsely stating that ZaagTech is a manufacturer or exporter of PQ Labs products. ZaagTech is not a manufacturer, exporter, or supplier for PQ Labs, and Defendant's statements are plainly false, misleading, and meant to trade on the goodwill of PQ Labs' name and brand in order to sell its own lesser known products.  As set forth above, Defendant's acts constitute trademark infringement, unfair competition, and false advertising under the Lanham Act and false advertising under Cal. Bus. & Prof. Code §17500.  Defendant's business acts are thus unlawful under both federal and state statutory law.

91.     Defendant's business acts are further unfair and fraudulent as they are likely to deceive the public.  In falsely stating a connection between PQ Labs and the ZaagTech touch screen products and between PQ Labs products and ZaagTech, Defendant is causing confusion and deception amongst consumers of such touch screen products.  ZaagTech is not a manufacturer or exporter of PQ Labs products.  By stating that ZaagTech is a manufacturer and exporter of PQ Labs products in online advertisments and product displays, Defendant is attempting to trade on the good name of PQ Labs to sell ZaagTech products.  Because PQ Labs and ZaagTech are engaged in the same business of designing, manufacturing, and selling touch screen products, consumers are likely to rely on Defendant's false statements and believe there is a connection as purported by Defendant. On information and belief, the public has in fact relied on these statements and been deceived into purchasing ZaagTech products on the mistaken belief they were purchasing PQ Labs sponsored products.

92.     Defendant has further engaged in untrue and misleading advertising by stating on online advertisements and product listings that ZaagTech is "PQ labs manufacturer and exporter in China" and that ZaagTech is "China PQ labs Manufacturer" on at least the websites tradevv.com and hisupplier.com.  ZaagTech is not a manufacturer or exporter of PQ Labs or its products and PQ Labs has never authorized ZaagTech to associate its name with PQ Labs or its products in any way.  The public is likely to be, and on information and belief has been, deceived by Defendant's false

3rd Amended Complaint

1    advertising in purchasing ZaagTech's lesser known and inferior touch screen products on the basis

2    of the asserted connection with the good name of PQ Labs and its products.

3         93.    PQ Labs has been damaged by Defendant's unfair competition and false advertising

4    and has suffered, and continues to suffer, irreparable harm as it loses sales, customers, and market

5    share due to Defendant's false statements and use of PQ Labs trademark.  PQ Labs therefore seeks

6    an injunction restraining the aforesaid unlawful, unfair, and fraudulent activities of Defendants.

7    **CLAIM 9 FOR UNFAIR COMPETITION**

8    **BY PQ LABS AGAINST YANG QI AND HAIPENG LI**

9         94.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 93 of this

10   Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33

11   through 40, and 45 through 60.

12        95.    Yang Qi and Haipeng Li created MultiTouch Group LLC to act as a sham distributor

13   from which to siphon customers and orders from PQ Labs, waiting to receive misdirected orders

14   from Yang Qi and taking a profit on each order fulfilled, thereby committing tortious interference

15   with PQ Labs' prospective economic advantage in respect of prospective sales to its customers, as

16   alleged herein.

17        96.    Yang Qi and Haipeng Li represented to customers that they should contact

18   MultiTouch Group LLC for taking and fulfillment of orders for PQ Labs products, holding out

19   MultiTouch Group LLC as an authorized distributor of PQ Labs products when in fact it was not

20   such an authorized distributor.

21        97.    Customers have been, and likely continue to be, deceived by Yang Qi's and Haipeng

22   Li's actions into thinking that MultiTouch Group LLC was authorized as a distributor to sell PQ

23   Labs products, when in fact it had no such authorization.

24        98.    Yang Qi and Haipeng Li have thus engaged in unfair competition by committing the

25   alleged tortious interferences and associated fraudulent business acts and practices.

26        99.    Yang Qi and Haipeng Li further engaged in unfair competition by committing unfair

27   business acts and practices in establishing MultiTouch Group LLC as a sham distributor to fulfill

28   misdirected orders from PQ Labs' customers.  Defendants' unfair competition is demonstrated by,

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

among other things, the public policy against selling a business's products without its knowledge or authorization and against usurping a business's sales and profits. Said Defendants' motivation in creating MultiTouch Group LLC was to attain an unauthorized cut from PQ Labs' revenues and profits while engaging in unlawful activities to do so and not engaging in legitimate activity to warrant such a cut.

100.    PQ Labs has suffered irreparable harm and damages as a result of the subject Defendants' tortious conduct and fraudulent and unfair business acts as PQ Labs lost a portion of gross sales and profits on products sold by MultiTouch Group LLC rather than directly by PQ Labs. PQ Labs is entitled to recover its damages sustained as a result of Defendants' unfair competition and the amount of said Defendants' unjust enrichment gained through their unfair competition, and may be further irreparably harmed if said Defendants continue the diversion of sales orders to themselves, entitling PQ Labs to injunctive relief to restrain said conduct.

## CLAIM 10 FOR VIOLATION OF CAL. PEN. CODE § 502
## BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

101.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 100 of this Complaint as though fully set forth herein.

102.    In or about January 2010, during Internet chat conversations, Jinpeng Li wrongfully utilized Plaintiffs' computer systems to transfer computer files and data to Yang Qi at Yang Qi's urging without Plaintiffs' authorization. In addition, Yang Qi, ZaagTech, and Jinpeng Li have sent several phishing emails to Plaintiffs, invading their computer network, seeking to extract confidential and proprietary information from Plaintiffs and their computer networks from January 27, 2011 to December 13, 2011, as alleged above and particularly in Paragraph 41. The emails contained computer viruses and Trojans that would have infected Plaintiffs' computers and networks had they been opened and did so infect. By so doing, said Defendants did:

a.    Knowingly access and without permission use Plaintiffs' data, computer, computer system, and computer network in order to wrongfully obtain Plaintiffs' property and files.

b.    Knowingly access and without permission take, copy, and/or make use of data from PQ Labs' computer, computer system, and computer network.

c.      Knowingly and without permission use and cause to be used Plaintiffs' computer services.

d.      Knowingly and without permission provide and assist in providing a means of accessing Plaintiffs' computer, computer system, and computer network in violation of Cal. Pen. Code § 502.

e.      Knowingly and without permission access and cause to be accessed Plaintiffs' computer, computer system, and computer network.

f.      And knowingly introduce a computer contaminant into Plaintiffs' computer, computer system, and/or computer network.

103.    These actions by the subject Defendants caused damage to Plaintiffs in the form of, among other things, loss of network usage and system and network bandwidth, as well as infection of Plaintiffs' computers and networks.

104.    Said Defendants are thus liable pursuant to Cal. Pen. Code § 502(e) for such damages sustained by Plaintiffs as a result of Defendants' unlawful activities identified in this cause of action. Defendants' activities, including without limitation, providing a means of access to Plaintiffs' computer systems, are further subject to injunction restraining said activities.

## CLAIM 11 FOR UNFAIR COMPETITION
## BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

105.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 104 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

106.    On information and belief, in or about January 2010, during Internet chat conversations, Jinpeng Li wrongfully utilized Plaintiffs' computer systems to transfer computer files and data to Yang Qi at Yang Qi's urging without Plaintiffs' authorization.  In addition, Yang Qi, ZaagTech, and Jinpeng Li have sent several phishing emails to Plaintiffs, invading its computer network, seeking to extract confidential and proprietary information from Plaintiffs and its computer networks from January 27, 2011 to December 13, 2011, as alleged above and particularly in Paragraph 41.  The emails contained computer viruses and Trojans that would have infected and did

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

so infect Plaintiffs' computers and networks upon opening.  By so doing, said Defendants committed the unlawful actions identified in the immediately preceding cause of action.

107.    Defendants violated the public policy inherent in Cal. Pen. Code § 502 prohibiting the actions which Defendants committed in violation thereof, including without limitation, accessing Plaintiffs' computers to gain information without Plaintiffs' consent and, in doing so to gain information from Plaintiffs in order to establish a competitive business.

108.    Plaintiffs have suffered harm as a result of Defendants' unlawful conduct and unfair competition in the form of lost use of, among other things, its computer networks.  The motivation, reasons, and justifications behind the subject Defendants' conduct was to develop a separate business to compete in the touch screen business against Plaintiffs.  The said Defendants' motivation was to steal Plaintiffs' proprietary information without its knowledge or consent.

109.    Yang Qi, ZaagTech, and Jinpeng Li have therefore engaged in unfair competition by committing unfair and unlawful business acts and practices.

110.    Plaintiffs have suffered past damages as a result of said Defendants' unfair business practices, and Plaintiffs are entitled to recover its damages sustained as a result of said Defendants' unfair competition, the amount of Defendants' unjust enrichment gained through their unfair competition, and an injunction restraining Defendants' continuing acts of unfair competition.

## CLAIM 12 FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### BY PQ LABS AGAINST YANG QI AND HAIPENG LI

111.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 110 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

112.    PQ Labs maintained business relationships with its customers advantageous to PQ Labs in which customers contacted PQ Labs regarding purchasing touch screen products and PQ Labs fulfilled customers' orders and requests.  In addition, customer sales orders quoted at prices offered by PQ Labs for available inventory were routinely accepted by PQ Labs and thus constituted written contracts which were known to Yang Qi and Haipeng Li as alleged hereinabove.

113.     During Yang Qi's employment at PQ Labs as sales and account manager, several customers contacted Yang Qi by email in his capacity as PQ Labs sales manager with sales orders requesting to buy PQ Labs products.  Yang Qi was, of course, aware of these emails, as it was his duty to accept the orders on PQ Labs' behalf, thus confirming the contracts, and assisting in filling the orders.  In each of these emails, a business relationship between the purchaser and PQ Labs was established in which PQ Labs was to benefit from the relationship in the form of a sale and further prospective economic gain that would result from future business with such customers.  On information and belief, Haipeng Li was aware of this information by discussions with Yang Qi occurring in or about the time of the tortious interferences alleged herein.

114.     As alleged hereinabove, Yang Qi diverted PQ Labs customer emails containing sales orders to MultiTouch Group LLC as a distributor of PQ Labs products that PQ Labs did not authorize.  PQ Labs had no knowledge that Yang Qi had diverted these sales orders to MultiTouch Group LLC, and did not authorize MultiTouch Group LLC to act as its distributor in any way.

115.     Yang Qi was aware and had knowledge of the customer sales order contracts and the general business relationship between PQ Labs and these customers as he served as sales representative for PQ Labs, completing orders between PQ Labs and the customers.  Haipeng Li was aware of this information by discussions with Yang Qi occurring in or about the time of the tortious interferences alleged herein.

116.     Yang Qi engaged in intentional conduct to disrupt the customer sales order contracts and business relationship and sales between PQ Labs and its customers by diverting the customers to MultiTouch Group LLC without PQ Labs' authorization or knowledge, instead of fulfilling the order directly through PQ Labs.

117.     Without Yang Qi's interference, PQ Labs would have realized and completed the sales to the customers that Yang Qi diverted away.  Further, PQ Labs would have realized its full profit on sales MultiTouch Group LLC made to customers.

118.     PQ Labs' loss of sales and profit was proximately caused by Yang Qi's, Haipeng Li's, and MultiTouch Group LLC's interference.

119.     Yang Qi conspired with Haipeng Li in agreeing to create and in aiding and abetting the creation of MultiTouch Group LLC as a sham distributor of PQ Labs products.  Aware of the wrongfulness of his actions in creating MultiTouch Group LLC, Haipeng Li advised Yang Qi in Internet chats to take care not to let his boss at PQ Labs find out about the distributor.  Haipeng Li therefore is liable for the torts of Yang Qi committed in furtherance of their agreement to create the sham MultiTouch Group LLC distribution company and perpetuate the tortious interferences with PQ Labs' customer contracts and prospective economic advantage arising from those relationships.

120.     Said Defendants have thus engaged in tortious interference with contract and prospective economic advantage, and PQ Labs is accordingly entitled to recover its damages in the amount of lost sales and profits suffered due to said Defendants' interference and the amount in unjust enrichment derived by Defendants' due to diversion of sales to MultiTouch Group LLC and otherwise.

121.     Said Defendants' interference was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of PQ Labs' rights.  Accordingly, in addition to general and compensatory damages, PQ Labs should be awarded exemplary and punitive damages sufficient to punish and make an example of said Defendants.

## CLAIM 13 FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### BY PQ LABS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

122.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 121 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

123.     PQ Labs, a designer, manufacturer, and seller of touch screen monitor products, maintained business relationships with its customers advantageous to PQ Labs in which customers contacted PQ Labs regarding purchasing touch screen products and PQ Labs fulfilled customers' orders and requests, with the ongoing prospect of sales and profits from these customer relationships. PQ Labs' relationships with certain of its customers and distributors were made publicly known through, among other means, publication on PQ Labs' website and on the Internet.  These

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

relationships were separate from those key relationships and customer information which PQ Labs kept secret and obtained independent econcomic value from keeping secret.

124.    Yang Qi, ZaagTech, and Jinpeng Li had knowledge of PQ Labs' relationships with its certain customers and distributors as a result of, among other things, Yang Qi's work as account manager with PQ Labs, Jinpeng Li's employment as an engineer with PQ Labs, and publication of the relationships on PQ Labs' website.

125.    On information and belief, Defendants contacted the PQ Labs customers and distributors in an effort to lure the customers and distributors away from PQ Labs, thereby engaging in intentional conduct to disrupt PQ Labs' business relationships and prospective economic relations and benefits with and from its customers.  Defendants acted to specifically and systematically target PQ Labs customers and distributors for solicitation and thereby divert PQ Labs' business to themselves.  Defendants intended not to compete fairly by obtaining its own customers through legitimate competition, but to eliminate its competitor PQ Labs by intentionally interfering with PQ Labs' known business relationships.

126.    The actions of said Defendants have actually, directly, and proximately caused damage to PQ Labs in the form of, *inter alia*, substantial lost customers, sales, and profits.

127.    Defendants have thus engaged in tortious interference of prospective economic advantage and PQ Labs is entitled to recover its damages in the amount of lost sales and profits suffered due to Defendants' interference and the amount in unjust enrichment derived by Defendants' from customers and sales diverted from PQ Labs.

128.    Said Defendants' interference was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of PQ Labs' rights.  Accordingly, in addition to general and compensatory damages, PQ Labs should be awarded exemplary and punitive damages sufficient to punish and make an example of said Defendants.

## CLAIM 14 FOR BREACH OF CONTRACT
## BY PINQI AGAINST JINPENG LI

129.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 128 of this Complaint as though fully set forth herein.

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

130.     PinQi and Jinpeng Li entered into valid contracts in the form of the Employment Contract and Employee Rules and Confidentiality Agreement dated July 3, 2009 (collectively, the "Jinpeng Li Contracts").

131.     PinQi has performed all its duties and obligations under the Jinpeng Li Contracts, including providing Jinpeng Li with employment and monetary compensation for Jingpeng Li's employment.

132.     On information and belief, during his employment in or around January 2010, Jinpeng Li breached Section 4 of the Employee Rules and Confidentiality Agreement by disclosing confidential information to Yang Qi in the form of trade secret drawings and diagrams of PinQi hardware and circuitry and software code.

133.     As a proximate cause of this breach of contract by Jinpeng Li, PinQi has been damaged in an amount to be proven at trial in that, among other things, PinQi has lost sales, profits, and revenues to the competition of ZaagTech, created and competing using PinQi's wrongfully disclosed confidential information.  PinQi is entitled to recover Defendants' unjust enrichment and its loss, as well as to an injunction restraining continuing breach by Jinpeng Li.

## CLAIM 15 FOR BREACH OF FIDUCIARY DUTY
## BY PLAINTIFFS AGAINST YANG QI AND JINPENG LI

134.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 133 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

135.     Jinpeng Li signed the Jinpeng Li Contracts dated July 3, 2009 as alleged hereinabove to become an engineer and employee of PinQi, PQ Labs' wholly-owned subsidiary.  Jinpeng Li was thus an employee and agent of PinQi, and was in a fiduciary relationship with PinQi and PQ Labs during the period he worked for PinQi.  As a fiduciary of Plaintiffs, Jinpeng Li owed Plaintiffs a duty of undivided loyalty.

136.     Yang Qi further had a fiduciary duty to PQ Labs as its employee, sales representative, and agent.  As alleged hereinabove, Yang Qi worked exclusively for the benefit of PQ Labs during his time as PQ Labs' sales representative, and PQ Labs controlled the assignments and sales

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

accounts Yang Qi handled.  Yang Qi accepted the duty of confidentiality and trust reposed in him by PQ Labs by, among other things, signing an agreement to maintain confidentiality with the company 22 Miles, Inc., which also required maintenance of confidentiality with PQ Labs, the company for whose benefit Yang Qi worked.  Due to the nature of Yang Qi's relationship with PQ Labs and his acceptance of PQ Labs' repose of trust in him, Yang Qi was a fiduciary of PQ Labs and thus owed PQ Labs a duty of undivided loyalty.

137.    On information and belief, Yang Qi and Jinpeng Li knowingly acted against Plaintiffs' interests and breached their duty of undivided loyalty by engaging in active competition against Plaintiffs while fiduciaries of Plaintiffs.  Yang Qi and Jinpeng Li began their plan to create a competing touch screen business in or about January 2010, while Jinpeng Li was still an employee of PinQi and while Yang Qi was still working for PQ Labs' benefit as accounts manager, that is, while both were still fiduciaries of Plaintiffs.  At this time, Defendants acted against the interests of Plaintiffs by, among other things, creating ZaagTech, or the nascent entity that would become ZaagTech, to compete directly against Plaintiffs in the touch screen industry.

138.    Plaintiffs did not give consent to Yang Qi's or Jinpeng Li's actions of directly competing against Plaintiffs.

139.    Plaintiffs have been harmed as a result of the foregoing breaches of fiduciary duty because, among other things, Yang Qi and Jinpeng Li created ZaagTech to actively compete against PQ Labs, and ZaagTech has competed with PQ Labs and succeeded in taking and undermining PQ Labs' customer relationships, business, sales, revenues and profits through sales of a competing product and associated activities, with corresponding losses to PinQi.

140.    Yang Qi's and Jinpeng Li's actions were substantial factors in causing Plaintiffs' harm as Plaintiffs saw a distinct dropoff in sales and revenue immediately on entry of ZaagTech into the market, during which time Defendants not only directly competed with PQ Labs, but specifically targeted PQ Labs in an effort to drive it from the market.  Plaintiffs are accordingly entitled to their damages suffered as a result of Yang Qi's and Jinpeng Li's breaches of fiduciary duty.

141.    Yang Qi's and Jinpeng Li's breaches of fiduciary duty were tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of Plaintiffs' rights.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1    Accordingly, in addition to general and compensatory damages, Plaintiffs should be awarded

2    exemplary and punitive damages sufficient to punish and make an example of said Defendants.

3                    **CLAIM 16 FOR FRAUDULENT CONCEALMENT**

4                       **BY PQ LABS AGAINST YANG QI**

5           142.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 141 of this

6    Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33

7    through 40, and 45 through 60.

8           143.    From 2009 to 2010 or thereabout, Yang Qi was engaged in a confidential, contractual,

9    and agency relationship with PQ Labs to serve as account manager and provide services in selling

10   PQ Labs' products as a result of which relationship Yang Qi had a fiduciary duty to disclose to PQ

11   Labs any unlawful actions or other misconduct that were in dereliction of Yang Qi's work

12   responsibilities to PQ Labs or otherwise damaged and/or compromised PQ Labs' business.  This

13   duty was part of Yang Qi's duty of undivided loyalty to and fiduciary relationship with PQ Labs

14   arising from the nature of his relationship with PQ Labs and PQ Labs' repose of trust and confidence

15   in him.

16          144.    As alleged hereinabove, Yang Qi knowingly diverted PQ Labs customer emails

17   containing sales orders to MultiTouch Group LLC as a distributor of PQ Labs products that PQ Labs

18   did not authorize.  PQ Labs had no knowledge that Yang Qi had diverted these sales orders to

19   MultiTouch Group LLC, and did not authorize MultiTouch Group LLC to act as its distributor in

20   any way.  Yang Qi intended to induce PQ Labs' reliance on his conduct as being lawful and proper,

21   and PQ Labs reasonably relied on Yang Qi's conduct, believing his efforts to be loyal and true.

22          145.    At no point in time did Yang Qi advise PQ Labs or any of its officers or employees

23   about the important facts of the diversion of the sales requests to MultiTouch Group LLC, or of

24   MultiTouch Group LLC's existence as a purported distributor for PQ Labs.  PQ Labs had no

25   knowledge that Yang Qi had diverted the purchase orders to MultiTouch Group LLC, and did not

26   authorize MultiTouch Group LLC to act as its distributor in completing orders.  Had PQ Labs known

27   of the true facts underlying the diversion of these purchase orders, it never would have permitted

28   such diversion.  Yang Qi therefore engaged in a fraudulent concealment in failing to inform PQ Labs

3rd Amended Complaint

of the existence of MultiTouch Group LLC as distributor and Yang Qi's actions in diverting sales away from PQ Labs. Yang Qi's concealment was in dereliction of his fiduciary duty to PQ Labs requiring him to refrain from acting against the interests of PQ Labs.

146.   These failures to disclose by Yang Qi to PQ Labs were material because PQ Labs, had it had knowledge, would not have allowed MultiTouch Group LLC to act as its nominal distributor or Yang Qi to divert sales away from PQ Labs, and MultiTouch Group LLC damaged PQ Labs by usurping a portion of profits on its sales and directing customers away from buying from PQ Labs directly.

147.   Yang Qi made these concealments with knowledge of the material omissions and with intent to deceive PQ Labs into relying on the material omissions. Among other things, Yang Qi never advised PQ Labs of the creation or existence of MultiTouch Group LLC, despite being engaged as an account and sales manager. Further, Internet chats between Yang Qi and third parties demonstrate that Yang Qi intended to induce PQ Labs to rely on the omissions in order for the sham distributor to exist and take in ill-gotten profit.   In a chat January 19, 2010 with Haipeng Li, Yang Qi stated that he works too much for PQ Labs but earns too little, intending to take a profit on PQ Labs' sales without expending any additional effort, besides forwarding sales requests to MultiTouch Group LLC.

148.   PQ Labs reasonably relied on Yang Qi's material omission of the existence and actions of MultiTouch Group LLC and to its detriment by allowing the diverted purchase orders to proceed. In so relying, PQ Labs had sales diverted from it, and lost profits on products.

149.   Yang Qi's fraudulent concealment entitles PQ Labs to recovery of all damages suffered as a result of the fraud, including lost sales and profits, as well as Yang Qi's and MultiTouch Group LLC's ill-gotten gain obtained by Yang Qi's fraud.

150.   Yang Qi's concealment was tortious, malicious, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of PQ Labs' rights. Accordingly, in addition to general and compensatory damages, PQ Labs should be awarded exemplary and punitive damages sufficient to punish and make an example of said Defendant.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

**CLAIM 17 FOR CONVERSION**

**BY PQ LABS AGAINST YANG QI AND HAIPENG LI**

151.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 150 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

152.   PQ Labs owned and possessed a certain 32-inch touch screen monitor entitled PQ Labs Multi-Touch 32" G3X32 Overlay involved in a sales transaction with a PQ Labs customer dated February 10, 2010.

153.   Yang Qi and Haipeng Li individually and through their company MultiTouch Group LLC intentionally and substantially interfered with the 32-inch touch screen monitor by taking possession of the property and fulfilling an order request sent directly to PQ Labs.

154.   PQ Labs did not consent to Defendants' taking possession of the touch screen product and acting as its distributor, nor did PQ Labs have knowledge of Defendants' actions.

155.   PQ Labs was harmed by Defendants' conduct as MultiTouch Group LLC took payment of the full retail price of $3,300 while paying to PQ Labs a wholesale price of $2,650.  PQ Labs would have realized the full profit of $3,300 instead of $2,650 but for Defendants' interference, which was a substantial factor in causing PQ Labs' harm.

156.   Plaintiff is entitled to recovery of its damages sustained due to Defendants' conversion of its property.

**CLAIM 18 FOR TRESPASS TO CHATTELS**

**BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI**

157.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 156 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

158.   Plaintiffs have owned and possessed personal property in the form of their computer networks and email systems from their incorporation to present.

159.   On information and belief, Yang Qi, ZaagTech, and Jinpeng Li intentionally interfered with Plaintiffs' use and possession of their computer networks and systems by sending

phishing emails to Plaintiffs seeking to extract confidential and proprietary information beginning on or about January 27, 2011 continuing to December 13, 2011.

160.    Plaintiffs did not consent to said Defendants' interference with their personal property.

161.    Plaintiffs suffered harm as a result of said Defendants' interference by, *inter alia*, compromise of their security, lost access to the full capacity of their computer networks and systems, and by potential and actual infection of their networks by computer viruses and Trojans contained in the phishing emails.

162.    The subject Defendants' interference with Plaintiffs' property was a substantial factor in causing Plaintiffs' harm, and Plaintiffs are therefore entitled to recover their damages sustained in an amount to be proven at trial.

## CLAIM 19 FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

163.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 162 of this Complaint as though fully set forth herein.

164.    On information and belief, Yang Qi, ZaagTech, and Jinpeng Li intentionally accessed Plaintiffs' computers by, among other things, sending phishing emails to Plaintiffs' employees between January 2011 and December 2011, as alleged hereinabove.

165.    Plaintiffs' computers accessed by Defendants are used in interstate commerce in the sale of PQ Labs' products and are thus protected computers within the meaning of the federal Computer Fraud and Abuse Act.

166.    Yang Qi and ZaagTech intentionally accessed Plaintiffs' protected computers without the authorization of Plaintiffs.

167.    As a result of Defendants' unauthorized access, on information and belief, Plaintiffs have suffered damage and loss in excess of the statutory amount in the form of, among other things, lost use of their computers networks and bandwidth and computer infection.  This loss of computer networks and bandwidth and computer infection was caused directly by the phishing emails sent by Defendants as the emails carried viruses and Trojans which infected Plaintiffs' computers on at least

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1    one occasion upon being opened by recipients.   Plaintiffs' are entitled to recovery of their damages

2    resulting from Defendants' actions, as well as an injunction restraining further unauthorized access

3    of their computers and networks.

### CLAIM 20 FOR UNFAIR COMPETITION

### BY PLAINTIFFS AGAINST YANG QI, ZAAGTECH, AND JINPENG LI

6        168.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 167 of this

7    Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33

8    through 40, and 45 through 60.

9        169.    Defendants have engaged in a systematic plan to usurp substantial business from PQ

10   Labs and drive PQ Labs and its subsidiary PinQi from the touch screen industry by specifically

11   targeting PQ Labs' known customers for solicitation and actual sales.  Defendants have so acted by,

12   *inter alia*, sending solicitation emails to PQ Labs' known customers in an attempt to steal business

13   away from PQ Labs, and in actually taking substantial business from PQ Labs.  In doing so,

14   Defendants' intent has been to establish a competing touch screen business without incurring the

15   effort of obtaining customers through fair and natural competition.

16       170.    There is a public policy against newly established competitors entering into the

17   marketplace and unfairly obtaining a foothold in the market simply by targeting a certain

18   competitor's known customers, usurping substantial business directly from the competitor, and

19   driving the competitor from the market.  To allow such action would incentivize competition

20   through negative, reductive action rather than positive action and innovation.  The harm of such

21   action to the victim, here Plaintiffs, outweighs the benefits to the actor, here Yang Qi, ZaagTech, and

22   Jinpeng Li.  Defendants have thus engaged in unfair competition by committing an unfair business

23   act or practice.

24       171.    Plaintiffs have suffered irreparable harm as well as past and continuing damages as a

25   result of the subject Defendants' unfair business acts as alleged above.  Plaintiffs are entitled to

26   recover their damages sustained as a result of said Defendants' unfair competition, the amount of

27   Defendants' unjust enrichment gained through their unfair competition, and an injunction restraining

28   Defendants' continuing acts of unfair competition.

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

## CLAIM 21 FOR UNFAIR COMPETITION

## BY PLAINTIFFS AGAINST YANG QI AND JINPENG LI

172.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 171 of this Complaint as though fully set forth herein, excluding Paragraphs 19 through 20, 23 through 24, 33 through 40, and 45 through 60.

173.    While still engaged by Plaintiffs and still fiduciaries of Plaintiffs, Defendants Yang Qi and Jinpeng Li engaged in action to establish a competitor in the touch screen industry, ZaagTech.  This action began in or around January 2010 when Yang Qi and Jinpeng Li engaged in Internet chat conversations establishing their plan to usurp and interfere with Plaintiffs' business and establishing a nascent ZaagTech to compete directly with PQ Labs.

174.    In directly competing against Plaintiffs while still fiduciaries, Yang Qi and Jinpeng Li not only acted unlawfully in breaching their fiduciary duty to Plaintiffs, but also competed unfairly in committing an unfair business act or practice.  The harm to Plaintiffs of Defendants' actions clearly outweigh the benefits as their directly competitive actions have served to divert substantial business, sales, and customers from PQ Labs to ZaagTech, business PQ Labs was able to obtain without breaching any fiduciary duty and without engaging in any similar malfeasance.  Defendants have violated a public policy against directly competing with one to whom a fiduciary duty is owed, and thus have engaged in an unfair business act or practice by established ZaagTech as a competitor to Plaintiffs.

175.    Plaintiffs have suffered irreparable harm as well as past and continuing damages as a result of the subject Defendants' unfair business acts as alleged above.  Plaintiffs are entitled to recover their damages sustained as a result of said Defendants' unfair competition, the amount of Defendants' unjust enrichment gained through their unfair competition, and an injunction restraining Defendants' continuing acts of unfair competition.

## ALLEGATIONS COMMON TO EACH CLAIM

## CIVIL CONSPIRACY

176.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 175 of this Complaint as though fully set forth herein.

3rd Amended Complaint

177.     Defendants and each of them did agree, conspire, plan, and effectuate a common plan and scheme to misappropriate Plaintiffs' proprietary information in order to establish a new business to compete directly with PQ Labs, poach PQ Labs customers, interfere with PQ Labs business and divert the same to ZaagTech and otherwise for Defendants' commercial gain.  Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged Plan.  Each of the Defendants furthered the conspiracy by cooperating with, lending aid and encouragement to, and/or by ratifying and adopting acts of other Defendants, as alleged above.  Specifically, Yang Qi and Jinpeng Li, officers of ZaagTech, conspired, as evidenced by Internet chat logs, beginning January 2010 to establish ZaagTech as a competitor, engaging in action to perpetuate the conspiracy including disclosure and use of Plaintiffs' Trade Secrets to produce ZaagTech touch screen products and use of PQ Labs trade secret customer information to poach PQ Labs' customers.  Yang Qi and Haipeng Li acted to divert sales from PQ Labs in furtherance of the Plan to take away business from PQ Labs and compete with PQ Labs.  Each Defendant explicitly agreed in the January 2010 Internet chats to participate in the conspiracy against PQ Labs.  Each Defendant had knowledge of the planned wrongful conduct as Yang Qi discussed his Plan in Internet conversations with Jinpeng Li and Haipeng Li, specifically about his desire to usurp sales from PQ Labs, and establish a business in competition with PQ Labs and intent to use Plaintiffs' proprietary information to do so.  Haipeng Li even mentioned in said chats that the Defendants should take care to keep details of the Plan secret from Yang Qi's superiors at PQ Labs.

178.     Each of the causes of action alleged above, Claims 1 through 21, was perpetrated by Defendants in furtherance of their conspiracy, namely, the Plan to usurp business from PQ Labs and establish ZaagTech as a competitor to PQ Labs using Plaintiffs' proprietary information.  Therefore, each Defendant is liable for each cause of action, even if an individual Defendant did not actively participate in every aspect of the wrongdoing alleged for each individual cause of action.

179.     As a proximate result of the wrongful acts herein alleged, Plaintiffs have been generally and specially damaged, as alleged in each of the causes of action set forth above.

180.     In doing the things herein alleged, Defendants acted with malice, oppression, and/or fraud as defined under Cal. Civ. Code § 3294, as specifically alleged above, in conscious disregard

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1  of Plaintiffs' rights, warranting an assessment of exemplary and punitive damages in an amount

2  appropriate to punish each of the Defendants and deter others from engaging in similar misconduct.

### ALLEGATIONS COMMON TO EACH CLAIM

### AIDING AND ABETTING

5       181.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 180 of this

6  Complaint as though fully set forth herein.

7       182.    Plaintiffs have been harmed by the torts and wrongdoing committed by Defendants as

8  alleged hereinabove, including the subject Defendants' misappropriation of trade secrets, copyright

9  infringement, trademark infringement, false advertising, unfair competition, fraud, tortious

10  interference with contract and prospective economic advantage, breach of fiduciary duty,

11  conversion, and trespass to chattels.

12      183.    Defendants and each of them gave substantial assistance and encouragement to one or

13  more of the intentionally tortious actions of other Defendants alleged hereinabove, with knowledge

14  that the other Defendants' conduct constitutes a wrongful action, and did so by, *inter alia*,

15  cooperating with each other, assisting each other, and/or failing to conduct themselves in a fashion

16  requisite to protect Plaintiffs' interests or to avoid any adverse effect on Plaintiffs where the other

17  Defendants had a fiduciary duty to Plaintiffs.  Specifically, Haipeng Li gave assistance to Yang Qi in

18  creating MultiTouch Group LLC by helping to register the sham distributor and diverting sales to the

19  sham distributor, and thereby also assisted the Defendants in their wrongdoing of misappropriating

20  and using PQ Labs' proprietary information to unfairly compete with PQ Labs, all in furtherance of

21  the Defendants' Plan of diverting business from PQ Labs to themselves.  Yang Qi and Jinpeng Li

22  assisted each other, and by consequence ZaagTech, for which both serve as officers, in committing

23  the above-alleged wrongdoing by sharing confidential, proprietary, and trade secret information and

24  documents of Plaintiffs between each other in order to establish a competing business unfairly and

25  steal sales and customers away from PQ Labs.

26      184.    Each of the causes of action alleged above, Claims 1 through 21, was perpetrated by

27  the Defendants with the assistance of each of the Defendants and in furtherance of the Plan described

28  hereinabove to unfairly compete with PQ Labs and poach sales and customers from PQ Labs, both

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

through the creation of ZaagTech and competing touch screen products, and diversion of sales opportunities to the sham distributor MultiTouch Group LLC.

185.   By conducting themselves as alleged hereinabove, Defendants acted not only for the collective advantage of themselves, but also to promote their own individual advantages.

186.   As a proximate result thereof, Plaintiffs have been damaged in a sum in excess of the Court's jurisdictional limits and in an exact sum to be proved at trial, and each of the Defendants is liable for the intentionally tortious actions of the Defendants being aided and abetted.

187.   Defendants are guilty of oppression, fraud, and malice toward Plaintiffs within the meaning of Cal. Civ. Code § 3294 such that Plaintiffs are entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.   For compensatory damages for sales, profits, and business lost as a result of Defendants' misappropriation of Plaintiffs' trade secrets, including their confidential customer lists and proprietary hardware designs and software code.

2.   For preliminary and permanent injunctive relief against Defendants requiring Defendants and their agents, servants, and employees, and all persons acting under, in concert, or for them:

a.   To refrain from:

i.   Using for themselves or anyone else or disclosing to anyone else PQ Labs' confidential customer lists and information and contacting PQ Labs' customers, Plaintiffs' proprietary hardware designs and software code and other trade secrets, selling touch screen products which incorporate Plaintiffs' trade secrets or otherwise utilize the ill-gotten gains of Defendants' wrongful conduct, and using or disclosing any other confidential or trade secret information, including but not limited to specifications, customers lists, material lists, business plans, marketing strategies, and/or other proprietary information of Plaintiffs (collectively, the "Proprietary Information").

ii.   Engaging in any efforts to commercially exploit Plaintiffs' Proprietary Information or to disrupt Plaintiffs' business pertaining thereto, including but not limited to

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

1  contacting or otherwise communicating with any actual or potential customer of Plaintiff or any

2  actual or potential vendor of Plaintiff PQ Labs.

3         iii.    Communicating, transferring, or divulging any confidential or trade secret

4  information or other Proprietary Information of Plaintiffs.

5         iv.    Misappropriating Plaintiffs' confidential information or trade secrets or other

6  Proprietary Information, or engaging in any unfair competition, or interfering in Plaintiffs' business,

7  actual or prospective, in any other way.

8         v.    Selling touch screen products which incorporate Plaintiffs' trade secrets or

9  otherwise utilize the ill-gotten gains of Defendant's wrongful conduct.

10         vi.    Assisting, aiding, or abetting any other person or business entity in engaging

11  in any of the activities prohibited pursuant to the injunctions requested above or otherwise set by the

12  Court.

13      b.    To turn over to Plaintiffs:

14         i.    Any and all copies in any format, whether hard copy or electronic, of

15  Plaintiffs' Trade Secrets and other Proprietary Information, including without limitation computer

16  files containing schematics and design drawings for circuitry and hardware for PQ Labs touch screen

17  prototypes and products and multi-touch software code, customer lists, and customer information.

18         ii.    Any and all copies in any format, whether hard copy or electronic, of any and

19  all communications with any actual or potential customer of PQ Labs and any and all

20  communications with any vendor of Plaintiffs.

21         iii.    Any and all other property belonging to Plaintiffs.

22      3.    For an order requiring Defendants to show cause, if they have any, why they should

23  not be enjoined as set forth hereinabove during the pendency of this action.

24      4.    For damages in the amount of the unjust enrichment Defendants have derived from

25  the misappropriation of Plaintiffs' trade secrets, including customer lists and confidential hardware

26  designs and software code, and their other tortious conduct.

27  //

28  //

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

5.      For punitive damages and attorneys' fees for Defendants' willful and malicious misappropriation of Plaintiffs' trade secrets, and for punitive damages for Defendants' other tortious conduct found to be malicious, oppressive, and fraudulent, as specifically alleged above.

6.      For compensatory damages for Defendants' infringement of Plaintiff's copyrights.

7.      For preliminary and permanent injunctive relief against Defendants restraining any and all continuing and future infringement of Plaintiff's copyrights.

8.      For statutory damages pursuant to the Copyright Act for Defendants' infringement of Plaintiff's copyrights.

9.      For attorneys' fees incurred in prosecuting the present action by PQ Labs as a result of Defendants' infringement of Plaintiff's copyrights.

10.     For preliminary and permanent injunctive relief restraining Defendants from using PQ Labs' trademark on or in connection with the sale, offering for sale, or advertising of PQ Labs' goods, and allowing seizure and destruction of any good or advertisment of Defendants improperly using PQ Labs' trademark, and restraining all false advertising involving PQ Labs' trademark and any and all further unfair competition by Defendants involving PQ Labs' trademark.

11.     For attorneys' fees incurred in prosecuting to obtain relief due to Defendants' trademark infringement, false advertising, and unfair competition.

12.     For compensatory and punitive damages for Yang Qi's fraudulent concealment.

13.     For compensatory and punitive damages arising from PQ Labs' loss sustained as a result of Defendants' tortious interference with prospective economic advantage, and injunctive relief restraining Defendants from engaging in further acts of interference with PQ Labs' customer orders, contracts, and business relations.

14.     For compensatory damages, recovery of unjust enrichment, and injunctive relief restraining further breach for Jinpeng Li's breach of the Jinpeng Li Contracts.

15.     For compensatory damages for loss sustained and for punitive damages as a result of Yang Qi's and Jinpeng Li's breaches of fiduciary duty.

16.     For compensation of damages for loss sustained by Plaintiffs to their computers, networks, and systems and for punitive damages as a result of Defendants' accessing, interfering

1    with, and providing a means of accessing Plaintiffs' computers and networks, and for injunctive

2    relief restraining Defendants from invading, accessing, and interfering with Plaintiffs' computers

3    and networks.

4          17.     A judgment and order requiring Defendants to pay such other damages as the Court

5    deems fit under the circumstances, or as may be sought by Plaintiffs according to proof at trial.

6          18.     A judgment and order sustaining each of the causes of actions set forth herein against

7    Defendants.

8          19.     Attorneys' fees, costs, and expenses as allowed by law.

9          20.     Any and all other relief as the Court deems just and reasonable.

10

11    Dated:   February 3, 2014                 Respectfully submitted,

12

13                                       By: /s/ Otto O. Lee
                                        Otto O. Lee

14                                         Kevin Viau
                                        Bonnie Wolf

15                                         INTELLECTUAL PROPERTY LAW GROUP LLP
                                        12 South First Street, 12th Floor

16                                         San Jose, California 95113
                                        Telephone: (408) 286-8933

17                                         Facsimile: (408) 286-8932

18                                         Steven A. Ellenberg
                                        LAW OFFICES OF STEVEN A. ELLENBERG

19                                         4 North Second Street, Suite 1240
                                        San Jose, California 95113

20                                         Telephone: (408) 998-8500
                                        Facsimile: (408) 998-8503

21

22                                         Attorneys for Plaintiffs PQ LABS, INC. and
                                        SHANGHAI PINQI DIGITAL TECHNOLOGY

23                                         CO., LTD.

24

25

26

27

28

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

43

1

### DEMAND FOR JURY TRIAL

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury

3  trial as to all issues in this lawsuit.

4

5

6  Dated:   February 3, 2014                    Respectfully submitted,

7

8                                              By: /s/ Otto O. Lee
                                                   Otto O. Lee
9                                                  Kevin Viau
                                                   Bonnie Wolf
10                                                 INTELLECTUAL PROPERTY LAW GROUP LLP
                                                   12 South First Street, 12th Floor
11                                                 San Jose, California 95113
                                                   Telephone: (408) 286-8933
12                                                 Facsimile: (408) 286-8932

13                                                 Steven A. Ellenberg
                                                   LAW OFFICES OF STEVEN A. ELLENBERG
14                                                 4 North Second Street, Suite 1240
                                                   San Jose, California 95113
15                                                 Telephone: (408) 998-8500
                                                   Facsimile: (408) 998-8503
16
                                                   Attorneys for Plaintiffs PQ LABS, INC. and
17                                                 SHANGHAI PINQI DIGITAL TECHNOLOGY
                                                   CO., LTD.
18

19

20

21

22

23

24

25

26

27

28

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint

1

## CERTIFICATE OF SERVICE

2          I certify that on February 3, 2014, I electronically filed the foregoing 3rd Amended Complaint

3   and Demand for Jury Trial with the Clerk of Court using the CM/ECF system, which will provide

4   notification of such filing by email to the following:

5

6   Perry J. Narancic, Esq.
    LexAnalytica, PC
7   1730 S El Camino Real, Suite 270
    San Mateo, CA 94402
8   pjn@lexanalytica.com

9   Attorney for Yang Qi, ZaagTech, Jinpeng Li, and Haipeng Li

10

11                                      By:/s/ Otto O. Lee_____
                                            Otto O. Lee
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTELLECTUAL PROPERTY LAW GROUP LLP
12 South First Street, 12th Floor
San Jose, California 95113

3rd Amended Complaint