IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PQ LABS, INC., and SHANGHAI PINQI DIGITAL TECHNOLOGY CO., LTD.,

    Plaintiffs,

  v.

YANG QI; ZAAGTECH, INC.; JINPENG LI; and HAIPENG LI,

    Defendants.

No. 12-0450 CW

ORDER GRANTING MOTION FOR ATTORNEYS' FEES
(Docket No. 195)

Plaintiffs PQ Labs, Inc. and Shanghai PinQi Digital Technology Co., Ltd. move for an award of attorneys' fees incurred in prosecuting this action. Defendants Yang Qi, Jinpeng Li and Zaagtech, Inc. oppose Plaintiffs' motion. The matter was taken on under submission on the papers. Having considered all the parties' briefs and supporting documentation, the Court now grants Plaintiffs' motion. Plaintiffs' motion also requests costs; this order will not address the request because the Clerk of Court already taxed costs.

## BACKGROUND

Plaintiffs brought this action against Defendants[1] for misappropriation of trade secrets, copyright infringement, trademark infringement, breach of contract and various other

---

[1] The operative complaint in this case also names Haipeng Li as a Defendant. Following trial, the Court dismissed Plaintiffs' claims against Haipeng Li for lack of prosecution. As used in the remainder of this Order, the term "Defendants" refers to the remaining Defendants Yang Qi, Zaagtech and Jinpeng Li unless otherwise specified.

business-related torts. The Court held a bench trial on these claims between March 10, 2014 and March 13, 2014. After considering all of the testimony, documentary evidence and arguments of counsel presented during and after trial, the Court entered findings of fact and conclusions of law. In its Order, the Court directed the clerk to enter judgment for Defendants on Plaintiffs' claim of copyright infringement, California Penal Code section 502, trespass to chattels, the Computer Fraud and Abuse Act and unfair competition related to the same. The Court also directed the clerk to enter judgment for Plaintiffs on their claims for misappropriation of trade secrets, trademark infringement, false advertising, tortious interference with prospective economic advantage, breach of contract, breach of fiduciary duty, conversion and unfair competition related to the same. The Court issued a permanent injunction against Defendants and awarded Plaintiffs actual and exemplary damages for their claim of misappropriation of trade secrets. The Court also determined that Plaintiffs are entitled to recover reasonable attorneys' fees and costs for the causes of action on which they prevailed and ordered further briefing to determine the amount of fees.

## LEGAL STANDARD

Plaintiffs brought and prevailed in both federal and California state law claims; the Court applies California state law in calculating the appropriate fees. Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (holding that Erie principles require a federal court to apply state law in calculating attorneys' fees when the prevailing party succeeded in

2

both state and federal claims).  In California, as in the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar."  Ketchum v. Moses, 24 Cal. 4th 1122, 1131 (2001) (citing Serrano v. Priest (Serrano III), 20 Cal. 3d 25 (1977)).  The "lodestar" is calculated by compiling the number of hours spent on litigating the case and multiplying it by a reasonable hourly rate of compensation for each attorney.  Id. at 1131-32.  A court may adjust the lodestar to address several factors of the lawsuit, including the difficulty of the case and the contingent nature of the fee award.  Maria P. v. Riles, 43 Cal. 3d 1281, 1294 n.8 (citing Serrano III, 20 Cal. 3d at 49).

## DISCUSSION

Plaintiffs move for an award of attorneys' fees in the amount of $1,110,254.06.  This figure represents $887,460.58 for the Intellectual Property Law Group (IPLG); $159,167.80 for Ellenberg & Hull; $36,300.68 for additional attorney expenses, such as research and translation fees; and $27,325.00 for IPLG's fees in preparing the instant motion for fees.

Preliminarily, the Court notes that because Plaintiffs did not prevail on all issues presented at trial, Plaintiffs first determine a reasonable method for calculating the portion of their time attributable to the claims for which they are entitled to fees.  To that end, Plaintiffs determine that, of their total hours worked on the case, their counsel spent 82% of their time proving claims on which they prevailed at trial.  Counsel arrives at this figure by calculating the percentage of time spent addressing the successful causes of action at trial.  The IPLG simply calculates its total lodestar and then discounts it to

account for the 82% figure.  For Ellenberg & Hull, counsel first count those tasks solely related to the claims on which Plaintiffs prevailed and then adjust fees for the remainder of their tasks to seek fees for 82% of that time.  Defendants do not object to the hourly rates charged by the attorneys.  Instead, Defendants raise four specific objections to Plaintiffs' requested award and offer two more general arguments about the award; the Court now addresses each in turn.

First, Defendants argue that the Court should reduce Plaintiffs' award by 10% because Plaintiffs overstaffed the case and by an additional 5% because Plaintiffs' counsel duplicated their efforts.  Plaintiffs respond that Defendants do not meet their burden to contest fees on this basis because Defendants make only a general argument without providing any authority regarding reasonable staffing levels and without specifying duplicated efforts.  As the party challenging Plaintiffs' fee request, Defendants bear a burden to "point to the specific items challenged, with sufficient argument and citations to the evidence."  Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n, 163 Cal. App. 4th 550, 564 (2008).  The Court agrees that Defendants did not meet their burden of showing a duplication of efforts.  In support of their motion, Plaintiffs submitted billing reports from all attorneys working on the case; Defendants could have tried to identify any specific duplications, but they did not.  Instead they offer a general and unsubstantiated allegation of duplication of efforts.  The Court will not reduce Plaintiffs' award on that basis.  Defendants also argue that Plaintiffs overstaffed the case.  The only evidence they offer in support of

4

this argument is a declaration from Defendants' counsel, in which he compares Defendants' level of staffing to Plaintiffs' staffing. But, as Plaintiffs argue, this information is not very useful to the reasonableness inquiry because Plaintiffs bore the burden at trial, so it is expected that they would have to expend more resources to fulfil their role in the litigation of their case. For the foregoing reasons, the Court will not reduce Plaintiffs' award on the grounds that Plaintiffs' counsel duplicated efforts or overstaffed their case.

Second, Defendants argue that the Court should reduce Plaintiffs' award by: (1) $10,000.00 for the time Plaintiffs billed for their unsuccessful application for a Temporary Restraining Order and (2) $15,000.00 for time Plaintiffs billed for their unsuccessful opposition to Defendants' motion to dismiss in part Plaintiffs' first amended complaint.  The Court is not persuaded that these reductions are appropriate.  Defendants do not cite any authority for excising unsuccessful moments from an otherwise-successful litigation campaign.  This is likely because California courts have not issued a clear pronouncement on the issue.  In the Ninth Circuit, however, it is established that a party may recoup fees even for "losing stages" of a case they eventually win.  See, e.g., Cabrales v. County of Los Angeles, 935 F.2d 1050, 1052-53 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim--even though she may have suffered some adverse rulings.")  Other federal courts in this district have applied this rule when awarding fees pursuant to California law.  E.g. Bonner v. Fuji Film, 2008 WL 410260, at

5

*2 (N.D. Cal.) (citing Cabrales) (holding that parties prevailing on a Cal. Civ. Code § 3344 claim are entitled to fees incurred in filing an unsuccessful motion to dismiss because they ultimately prevailed in the litigation).  Because Defendants' argument is unsupported by authority, the Court opts to apply the rule as articulated in Cabrales and will not reduce Plaintiffs' fee award on the basis of Defendants' argument.

Third, Defendants ask the Court to reduce Plaintiffs' award by 10 to 30% because Plaintiffs block-billed[2] their invoices. Defendants provide the Court with three illustrative block-billed time entries, but they do not object to specific portions of the entries.  Instead, they ask that the Court exercise its general discretion and reduce the award by a percentage of its choosing. The Court declines to do so.  First, as Plaintiffs show, block billing has been accepted in this district.  See, e.g., Stonebrae, L.P. v. Toll Bros., Inc., 2011 WL 1334444 at *8 (N.D. Cal.) ("Block-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award.").  Second, as explained above, Plaintiffs reduced their award request to 82% of the total fees they charged for this case to account for the time spent on the claims on which they did not prevail.  This reduction was designed to address the portions of time entries for which Plaintiffs are

---

[2] Block billing is a time-keeping method where an attorney enters the total daily time spent working on a case, rather than itemizing the time spent on a specific task.  See Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008); see also Christian Research Inst. v. Alnor, 165 Cal. App. 4th 1315, 1325 (2008).

6

not entitled to recoup their fees, whether block-billed or not. Finally, the Court's review of the time entries reveals that Plaintiffs' time entries, though block-billed, contain sufficient detail to identify precisely the task accomplished. If, for example, there were large blocks of time billed for tasks unrelated to the claims on which Plaintiffs prevailed, Defendants had ample opportunity and information on which to challenge those specific entries. Defendants declined to do so. For these reasons, the Court will not reduce Plaintiffs' fee award due to Plaintiffs' block billing.

Fourth, Defendants ask the Court to reduce Plaintiffs' award by an amount determined by the Court because Plaintiffs did not succeed in proving all their requested damages. The Court's Order following the bench trial explained that Plaintiffs were only able to establish an actual loss of $650.00, but that they also demonstrated that Defendants were unjustly enriched by $214,800.00 by their misappropriation of trade secrets; the Court thus awarded Plaintiffs $215,450.00 in damages. Defendants argue that Plaintiffs' fee award should be reduced because Plaintiffs sought over seven million dollars in damages on their trade secret claims but were awarded less than 3% of their claim. Plaintiffs respond that they obtained significant relief on their misappropriation claim in that they obtained permanent injunctive relief, so any argument that their award should be reduced for failure to obtain the relief they sought fails. The Court agrees. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). In this case,

7

Plaintiffs proved their entitlement to significant injunctive relief, commensurate with the scope of the case. As Defendants themselves argue, the legal issues presented in the case were straightforward and the documents were not voluminous. There is not so wide a deviation from the scope of the case to the results obtained to warrant a reduction of attorneys' fees on that basis.

The Court now turns to Defendants' more general arguments. Defendants ask that the Court apply a 10% across-the-board "haircut" to the award, based on the exercise of the Court's discretion, and due to the "massive" size of the requested award. The Court does not agree that "massive" is an accurate descriptor of the award requested in this case, considering the scope of the case and the relief Plaintiffs received. The Court is not persuaded that imposing a 10% reduction to the award request is warranted.

There remains one final matter to address. Defendants ask that the Court only hold Defendants Qi and Li liable for the fee award. Defendants argue that Zaagtech cannot be held liable for fees because California law only permits an award of fees where there has been "willful and malicious misappropriation," and this Court's previous Order stated that a corporation cannot commit willful and malicious conduct. However, as Plaintiffs show, the imposition of fees against Zaagtech in this instance is proper because Qi and Li were officers of Zaagtech and because the Court found that Qi and Li committed the requisite conduct with the requisite mental state to warrant attorneys' fees. California law permits the award of attorneys' fees against a corporation upon the showing that the corporation's "officer, director, or managing

8

agent" committed the wrongful act warranting fees. Cal. Civ. Code § 3294(b). Accordingly, the Court will award attorneys' fees against Defendants Qi, Li and Zaagtech.

For all of the above-articulated reasons, the Court finds that Defendants' objections to Plaintiffs' motion are unavailing. The Court thus finds that Plaintiffs are entitled to attorneys' fees in the requested amount of $1,110,254.06.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees (Docket No. 195) is GRANTED. Defendants Qi, Li and Zaagtech are ordered jointly and severally to pay Plaintiffs' attorneys' fees forthwith in the amount of $1,110,254.06.

IT IS SO ORDERED.

Dated: January 16, 2015

_____
CLAUDIA WILKEN
United States District Judge